UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KNEALY P., | Case No.: 20-cv-0984-AJB-BGS |
| Plaintiff, | |
| v. | **REPORT AND RECOMMENDATION TO** |
| KILOLO KIJAKAZI, Acting Commissioner of Social Security,[1] | (1) **GRANT PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT;** |
| Defendant. | (2) **DENY DEFENDANT'S MOTION FOR SUMMARY JUDGMENT; AND** |
| | (3) **REMAND FOR FURTHER ADMINISTRATIVE PROCEEDINGS** |
| | [ECF 14-15] |

## I.     INTRODUCTION

Plaintiff Knealy P. ("Plaintiff") has filed a Complaint seeking judicial review of the Commissioner of the Social Security Administration's ("Commissioner" or "Defendant") denial of disability insurance benefits under the Social Security Act, (ECF 1), and the Commissioner has filed the Administrative Record.  (ECF 8-11.)

---

[1] Kilolo Kijakazi became Acting Commissioner of Social Security on July 9, 2021 and is therefore substituted for Andrew Saul as Defendant. *See* 42 U.S.C. § 405(g); Fed. R. Civ. P. 25(d).

Plaintiff has filed a Motion for Summary Judgment seeking reversal of the final decision denying benefits and a remand for further administrative proceedings. (ECF No. 14.) Plaintiff argues the Administrative Law Judge ("ALJ") committed reversible error in the rejection of multiple treating physician opinions, rejection of Plaintiff's symptom testimony, and reliance on a flawed hypothetical. (ECF 14-2 at 21-34.)[2] Plaintiff argues remand is required to address these errors as well as new evidence submitted to the Appeals Council, a treating physician opinion. (*Id.* at 34-35.) The Commissioner's Cross Motion for Summary Judgment and Opposition argues that the ALJ properly rejected the treating physician opinions and Plaintiff's subjective symptom testimony, and that the hypothetical was not flawed. (ECF No. 15 at 6-21.) As to the new evidence submitted to the Appeal's Council, the Commissioner argues remand is not necessary because it was duplicative. (*Id.* at 19-21.) Plaintiff has filed a Reply. (ECF 16.)

After careful consideration of the parties' arguments, the administrative record and the applicable law and for the reasons discussed below, the Court recommends Plaintiff's Motion for Summary Judgment be GRANTED, the Commissioner's Cross Motion for Summary Judgment be DENIED, and the case be REMANDED for further proceedings.

## II.   PROCEDURAL HISTORY

Plaintiff filed an application for disability insurance benefits on October 17, 2016, with an alleged onset date of April 7, 2016. (AR 116, 209-217.) Her application was denied, (AR 136-141) and her subsequent request for reconsideration was also denied (AR 142-147). At Plaintiff's request, a hearing before an ALJ was held on October 23, 2018 at which Plaintiff was represented by counsel and testified, along with a vocational expert. (AR 148-49 (request for hearing), 68-98 (transcript of hearing).) On April 29,

---

[2] The Court cites the electronic CM/ECF pagination for citations to the parties' briefs. All other citations are to the Administrative Record's pagination. Where the Court is discussing the ALJ's citations to exhibits, the Court includes parallel citations to those exhibits in addition to citation to the Administrative Record.

2019, the ALJ issued a decision finding Plaintiff was not disabled and denied Plaintiff's application for benefits.  (AR 39-63.)  Plaintiff submitted additional evidence to the Appeals Council, including a physician opinion from Dr. Xoung K. Tang that it is at issue in this case.  (AR 16-20.)  The Appeals Council's March 27, 2020 decision noted additional evidence had been submitted, but denied review.  (AR 1-5.)

## III.   SUMMARY OF FIVE STEPS AND ALJ'S FINDINGS[3]

The ALJ's decision explains and then goes through each potentially dispositive step of the five-step evaluation process for determining whether an individual has established eligibility for disability benefits.[4]  (AR 43-56.); *see Keyser v. Comm'r Soc. Sec. Admin.*, 648 F.3d 721, 724-25 (9th Cir. 2011); *see* 20 C.F.R. §§ 404.1520.

At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since April 7, 2016.  (AR 44.)  At step two, the ALJ found Plaintiff had "the following severe impairments: residuals of cervical fusion; degenerative changes of the lumbar spine and hips; obesity; subjective loss of sensation of right hand; history of asthma; depression/bi-polar; anxiety; and personality/impulse disorder," (AR 44), but found insufficient evidence that other alleged medically determinable impairments

---

[3] The Court does not discuss the ALJ's findings in detail here, but briefly notes findings that of particular significance to Plaintiff's challenges to the ALJ's decision.  Those issues are discussed in more detail below.

[4] In order to qualify for disability benefits, an applicant must show that he or she suffers from a medically determinable physical or mental impairment that can be expected to result in death, or that has lasted or can be expected to last for a continuous period of not less than twelve months and the impairment renders the applicant incapable of performing the work that he or she previously performed or any other substantially gainful employment that exists in the national economy.  42 U.S.C. §§ 423(d)(1)(A), (2)(A) (defining disability).  An applicant must meet both requirements to be "disabled." *Id.*  The claimant bears the burden of proving he is disabled.  *Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 689 (9th Cir. 2009).  But, at step five, the Commissioner bears the burden of showing the claimant can do other kinds of work that exist in significant numbers in the national economy "taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Id.*

resulted in more than a minimal effect on her ability to work.  (AR 44-45.)

At step three the ALJ considers whether the claimant's impairments meet or equal one or more of the specific impairments or combination of impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1, the listings.  *See* §§ 404.1520(a)(4)(iii), 404.1520(d), 404.1525, 404.1526.  Here, the ALJ found Plaintiff did not meet a listing, specifically listings 1.04 (major disorders of the spine) or 12.04 (mental impairments). (AR 45-46.)  In analyzing whether Plaintiff's impairments or combination of impairments met listing 12.04, the ALJ found "[w]ith regard to concentrating, persisting, or maintaining pace, the claimant has a moderate limitation."  (AR 46.)  As discussed in more detail below, Plaintiff argues the ALJ failed to include this finding in Plaintiff's residual functional capacity ("RFC") and the hypothetical posed to the vocational expert to determine if there were jobs available in the national economy that Plaintiff was capable of doing.  (*See infra* V.D.)

If the claimant does not meet a listing, the ALJ "assess[es] and makes a finding about [the claimant's] residual functional capacity based on all the relevant medical and other evidence in [the claimant's] case record."  20 C.F.R. §§ 404.1520(e).  A claimant's RFC is the "most [they] can still do despite [their] limitations" taking into account all medically determinable impairments, including "medically determinable impairments that are not 'severe.'"  20 C.F.R. § 404.1545(a)(1)(2); *see also* 42 U.S.C. § 423(d)(2)(b). The RFC is used at the fourth and fifth steps to determine whether the claimant can do their past work (step four) or adjust to other available work (step five). §§ 404.1520(e), 404.1545(a)(5).

Here, the ALJ found the following RFC for Plaintiff:

After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except the claimant can lift up to 20 pounds occasionally and no more than ten pounds frequently, stand/walk for six hours in an eight-hour work day and sit for six hours in an eight-hour work day, occasionally climb ramps/stairs, never climb ropes, ladders or scaffolds; occasionally balance, stoop, kneel, crouch,

4

and crawl; limited to no constant overhead reaching, bilaterally; in terms of handling and gross manipulation the claimant is limited to no constant power gripping or grasping on the right; in terms of fine manipulation, the claimant is limited to no repetitive fingering on the right.  The claimant should avoid concentrated exposure to extreme cold, fumes, dust, odors, and gases, unexpected heights, vibration, and moving and dangerous machinery.  The claimant is able to understand, remember, and carry out simple instructions and tasks, but should not work in a setting that includes constant or regular contact with the general public or more than infrequent handling of customer complaints.

(AR 46-47.)  As explained further below, this RFC does not account for the more restrictive limitations found for Plaintiff by her treating physicians, including the amount of time she could stand and walk in an eight-hour workday, amount of weight she could lift or carry, and the amount of time she would likely be absent from work.  (*See infra* V.A.)  It also does not account for Plaintiff's testimony regarding the severity of her symptoms.  (*See infra* V.C.)

The ALJ decision then explains the two-step process to evaluate symptom testimony and finds the objective medical evidence does not support disabling functional limitations that exceed the ALJ's residual functional capacity.  (AR 47-51.)

The decision goes on to explain the weight, if any, given to numerous medical opinions, giving great or significant weight to the non-examining physicians Dr. Naiman and Dr. Kalmar (AR 51-52) and examining physician Dr. Glassman (AR 52), but no weight to the treating physician opinions of Dr. Kelso and Dr. Smith and minimal weight to the treating physician opinion of Dr. Harvey (AR 52-53).  Plaintiff challenges the ALJ's rejection of the treating physician opinions of Dr. Harvey and her primary care physician Dr. Kelso.

At step four, the ALJ found Plaintiff could not do her past relevant work as a waitress, bartender, or sales clerk.  (AR 54.)  At step five, the ALJ considers whether the claimant can do other work, considering the claimant's age, education, work experience, and the limitations in the RFC.  20 C.F.R. §§ 404.1520(a)(4)(v), 404.1545(a)(5)(ii).  If

20-cv-0984-AJB-BGS

the claimant can do other available work, then the claimant is found not disabled.  If not, then the claimant is disabled.  *See* 20 C.F.R. §§ 404.1520(a)(4)(v), 404.1520(g); *see also Bustamante v. Massanari*, 262 F.3d 949, 954 (9th Cir. 2001).  Here, the ALJ heard and relied on testimony from a vocational expert that work existed in significant numbers in the national economy for a person of Plaintiff's age, education, work experience and with the RFC found by the ALJ.  (AR 54-55.)  In addition to the issues noted above regarding the RFC not accounting for the treating physician opinions or Plaintiff's symptom testimony, Plaintiff argues the hypothetical presented to the vocational expert, that was based on the RFC, was flawed because it did not include the ALJ's own finding that Plaintiff had *moderate* limitations in concentration, persistence, or pace.

## IV.  SCOPE OF REVIEW

Section 405(g) of the Social Security Act allows unsuccessful claimants to seek judicial review of a final agency decision.  42 U.S.C. § 405(g).  This Court has jurisdiction to enter a judgment affirming, modifying, or reversing the Commissioner's decision.  *See id.*; *see also* 20 C.F.R. § 404.900(a)(5).  The matter may also be remanded to the Social Security Administration for further proceedings.  42 U.S.C. § 405(g).

If the Court determines that the ALJ's findings are not supported by substantial evidence or are based on legal error, the Court may reject the findings and set aside the decision to deny benefits.  *Aukland v. Massanari*, 257 F.3d 1033, 1035 (9th Cir. 2001).  The Court "must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence."  *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (citation omitted).  The Court may "review only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which he did not rely."  *Garrison v. Colvin*, 759 F.3d 995, 1010 (9th Cir. 2014).  "When evidence reasonably supports either confirming or reversing the ALJ's decision, we may not substitute our judgment for that of the ALJ."  *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1196 (9th Cir. 2004).

## V.   DISCUSSION

Plaintiff argues four errors require remand: (1) the ALJ's rejection of two treating physician opinions; (2) the ALJ's rejection of Plaintiff's subjective complaints; (3) the ALJ's reliance on a hypothetical to the vocational expert that lacked the ALJ's own findings regarding concentration, persistence, and pace; and (4) whether remand is required for the ALJ to consider a treating physician opinion submitted to the Appeals Council after the ALJ's decision was issued.  (ECF 14-2 at 21-30 (treating physician opinions); 30-33 (Plaintiff's symptom testimony); 33-34 (flawed hypothetical); 34-36 (new evidence).)

Because the opinions of three of Plaintiff's treating physicians and one examining physician are of consequence to numerous issues, the Court first summarizes each of those opinions and the ALJ's treatment of each rather than repeating each as to every issue implicated by their opinions.  After summarizing these opinions, the Court addresses the issues raised by Plaintiff.

### A.   Treating and Examining Physician Opinions

The ALJ gave no weight to the opinion of treating physician Dr. Kelso, Plaintiff's primary care physician, and minimal weight to the opinion of Plaintiff's treating psychiatrist, Dr. Harvey.  (AR 52-53.)  The ALJ gave full weight to the opinion of examining physician Dr. Glassman, a psychiatrist.  (AR 52.)  The opinion of treating physician, Dr. Tang, was submitted to the Appeals Council after the ALJ issued his decision.  (AR 16-20.)

### 1.   Dr. Kelso

The ALJ's decision primarily addresses Dr. Kelso's October 17, 2018 opinion, (AR 52), however, the decision also briefly addresses some "Work Status Reports."  (AR 53 (citing AR 1508 [Ex. 12F at 44] and AR 1534 [Ex. 12F at 70]), AR 52 (citing AR 1633 [Ex. 14F]).)  Because the ALJ addressed them, they are summarized here, but as explained below, Dr. Kelso's October 17, 2018 opinion is more extensive and the errors Plaintiff raises concern the October 17, 2018 opinion.

### a)    Work Status Reports

The ALJ gave no weight to three "Work Status Reports" dated May 8, 2017, August 11, 2017, and August 16, 2018.  (AR 53 (citing AR 1508 [Ex. 12F at 44] and AR 1534 [Ex. 12F at 70], AR 52 (citing AR 1633 [Ex. 14F]).)  The May 8, 2017 report identified diagnoses for anxiety, chronic pain, and peripheral neuropathy and placed Plaintiff off work for two months, from June 2, 2017 through August 2, 2017.  (AR 1534.)  The August 11, 2017 report placed Plaintiff off work for an additional three months, from August 2, 2017 through November 3, 2017.  (AR 1508.)  The ALJ notes these reports are in the record and gives them no weight because the statements do not include "specific functional limitations or restrictions, refer to temporary periods of time less than one year, and appear to be in response to a request from the claimant to keep her on long term/short term disability."  (AR 53.)  The August 16, 2018 report identified diagnoses of back pain, cervical spondylosis, peripheral neuropathy, and generalized anxiety disorder.  (AR 1633.)  It indicates Plaintiff is "[u]nable to work due to anxiety, neck/back pain from severe spondylosis [and] peripheral neuropathy."  (AR 1633.)  The ALJ also gave this report no weight because it did not contain "specific functional limitations as to the reason Plaintiff could not work."  (AR 52.)  The ALJ indicated that the determination that Plaintiff was unable to work was reserved to the Commissioner of Social Security.  (AR 52.)

### b)    Dr. Kelso's October 17, 2018 Opinion

Dr. Kelso's October 17, 2018 opinion indicates she began treating Plaintiff in 2015 and had most recently examined Plaintiff on September 5, 2018.  (AR 1634.)  She indicates she has personally seen Plaintiff 29 times in her three years treating her and notes Plaintiff has seen multiple specialists as well.  (AR 1634.)  The opinion identifies the following diagnoses:  cervical spondylosis with myelopathy, peripheral neuropathy, generalized anxiety disorder with PTSD, and bilateral carpal tunnel.  (AR 1634.)  Dr. Kelso also indicates "she has multiple other diagnoses but these are the most debilitating."  (AR 1634.)  The opinion identifies positive clinical examination findings

that support her diagnosis: "muscle twitching, mild patchy sensory loss to pin prick, severe anxiety – restlessness, tremor, easily tearful." (AR 1634.) She also identifies positive laboratory findings that support her diagnosis: "MRI cervical spine with multilevel cervical spondylosis [and] neuroforaminal narrowing. EMG with evidence of peripheral neuropathy." (AR 1634.) She indicates Plaintiff's condition lasted or is expected to last at least twelve months. (AR 1635.)

In addressing Plaintiff's pain, Dr. Kelso indicates it is in her back and neck with radicular symptoms, severe, constant, and precipitated or aggravated by "prolonged activity/standing [and] prolonged rest." (AR 1635.) The opinion indicates that Plaintiff's pain or other symptoms constantly interfere with attention and concentration. (AR 1635.) She indicates that Plaintiff's symptoms are consistent with Dr. Kelso's diagnoses and that emotional factors contribute to the severity of Plaintiff's symptoms and functional limitations. (AR 1635.) The opinion notes that "severe anxiety [and] PTSD make symptoms worse/more pronounced." (AR 1635.)

As to Plaintiff's postural limitations, Dr. Kelso indicates Plaintiff could only sit two hours out of an eight-hour workday, stand/walk a total of one hour in an eight-hour workday, "should not sit for a prolonged period," and would sometimes need to lie down during an eight-hour workday. (AR 1636.) She also notes the sitting and standing hour limits are approximate, that Plaintiff needs to be able to get up and move when necessary based on symptoms, and would frequently need to take unscheduled breaks in an eight-hour workday. (AR 1636, 1638.) Additionally, Dr. Kelso indicates that Plaintiff "would likely be absent from work as a result of the impairments and/or treatment . . . more than three times a month." (AR 1639.) Dr. Kelso also opines that Plaintiff could never lift or carry any amount of weight and has "marked (effectively precluded) limitations in reaching, handling, and fingering" bilaterally. (AR 1637-38.)

In response to the question "[w]ithin a reasonable degree of medical certainty, what is the earliest date that this description of symptoms and limitations applies to?" Dr.

Kelso responds December 12, 2016.  (AR 1639.)  The report indicates Dr. Kelso is a specialist in internal medicine.  (AR 1639.)

In addressing the October 2018 opinion, the ALJ begins by identifying Dr. Kelso's limitations as to standing, walking, and sitting, preclusion from reaching, handling, and fingering bilaterally, and need for frequent unscheduled breaks.  (AR 52.)  The ALJ then asserts that the opinion is unsupported by contemporaneous records because "Dr. Kelso backdated her opinion to the period beginning December 2, 2016, but in June 2017 Dr. Kelso reported in her treatment notes that 'I am not ready to place her on permanent disability for pain and anxiety.'"  (AR 52 (quoting AR 1513 [Ex. 12F/49]).)

The decision then indicates that "[w]hile Dr. Kelso alleged peripheral neuropathy and no use of hands, this was not supported by [sic] in the record by an EMG/NCS." (AR 52.)  The ALJ also found Plaintiff's physical examinations did not support Dr. Kelso's "limitations of the hands or the inability to lift or carry even one pound."  (AR 52.)  The ALJ then indicates as to her "ability to lift/carry and perform postural activities," that her physical examinations "consistently showed mildly decreased active range of motion in cervical spine, full active range of motion in the shoulders, and normal gait and station."  AR 52 (citing AR 6708 [Ex. 38F at 46] and AR 7665 [Ex. 42F at 10]).).

The ALJ also rejected Dr. Kelso's opinion because it was based "in part on psychological conditions for which she is unqualified to opine."  (AR 52.)  The decision also indicates that "Dr. Kelso['s] statement in June 2017 affirmatively demonstrated that Dr. Kelso based her statement on subjective complaints of pain and a subjective history of anxiety."  (AR 52.)  The ALJ then concludes that "the claimant and Dr. Kelso had a conversation in October 2018 as far as the things she could do or not do and Dr. Kelso afforded too much weight to subjective complaints and limitations provided by the claimant."  (AR 52.)

### 2. Dr. Harvey

Dr. Harvey, Plaintiff's treating psychiatrist, provided an opinion dated October 22, 2018.  (AR 1640-1646.)  The opinion indicates she was treating Plaintiff for mood disorder, anxiety disorder, rule out ADHD, and drug and alcohol use disorder in remission.  (AR 1640.)  The opinion identifies the Plaintiff's prescribed medications and then identifies Plaintiff's signs and symptoms based on Dr. Harvey's interactions and examinations of Plaintiff.  (AR 1641-42.)  The opinion goes on to evaluate Plaintiff's mental abilities to do unskilled and semi-skilled and skilled work activities.  (AR 1642-43.)  Dr. Harvey indicates Plaintiff is "[l]imited but satisfactory" in most categories of unskilled work, but "seriously limited and unsatisfactory" in "[c]omplete a normal workday and workweek without interruption from psychologically based symptoms," "perform at a consistent pace without an unreasonable number and length of rest periods," and "deal with normal work stress."  (AR 1642-43.)  As to semi-skilled and skilled activities, Dr. Havey selected both "limited but satisfactory" and "seriously limited and unsatisfactory" for "understand and remember detailed instructions" and "carry out detailed instructions." (AR 1643.)

Dr. Harvey's opinion indicates Plaintiff is not a malingerer and does not have a low IQ or reduced intellectual functioning.  (AR 1644.)  She indicates that Plaintiff's mental conditions do not exacerbate pain or other physical symptoms.  (AR 1644.)  As to functional limitations, Dr. Harvey finds moderate limitations in social functioning and maintaining concentration, persistence, or pace.  (AR 1644.) The opinion indicates Plaintiff has one to two episodes of decompensation within a 12-month period.  (AR 1644.)  Dr. Harvey indicates on average, Plaintiff would be absent from work more than three times a month as a result of her impairments.  (AR 1645.)

The opinion states that Plaintiff's impairments are consistent with the symptoms and functional limitations described in the evaluation.  (AR 1645.)  Dr. Harvey also indicates "[w]ithin a reasonable degree of medical certainty, . . . the earliest date that the

20-cv-0984-AJB-BGS

description of symptoms and limitations applies is 2012."  The opinion also indicates that Dr. Harvey's area of specialty is psychiatry.  (AR 1646)

The ALJ gave only two reasons for giving Dr. Havey's opinion minimal weight.  "The opinion of Dr. Harvey is given minimal weight because she ignored the claimant's history of missed or cancelled appointments and noncompliance with medications."  (AR 53.)  "Further, Dr. Havey's conclusions are not consistent with the findings of Dr. Glassman."  (AR 53.)

### 3.   Dr. Glassman

Dr. Glassman provided a psychiatric evaluation of Plaintiff dated February 1, 2017.  (AR 1216-1221.)  The opinion indicates it is based on an interview with Plaintiff and a review of records.  (AR 1216.)  Dr. Glassman provides information on Plaintiff's family and work history as well as where she lives.  (AR 1216.)  He then includes her reports as to pain, anxiety, and mood.  (AR 1217.)  It briefly summarizes Plaintiff's past substance abuse, psychiatric and medical history, as well as her current psychiatric and pain medications.  (AR 1218.)

The mental status examination portion of the opinion describes Plaintiff as "demonstrating a responsive mood and good range of affect, [h]owever, she was considerably anxious, with considerable psychomotor agitation."  (AR 1219.)  Dr. Glassman notes "[h]er speech was rapid and pressured, and there was a 'hyper,' frantic quality, with difficulty calming and self-soothing."  (AR 1219.)  Dr. Glassman notes '[h]er thought processes were otherwise coherent, relevant, and goal-directed, and there was no evidence of any psychotic symptoms."  He states "[s]he was able to follow all instructions" and "[h]er behavior was socially appropriate, without any odd or bizarre behavior."  (AR 1219.)  The opinion indicates average intellectual functioning and "Serial 3's without error, although sometimes slowly" and some difficulty with a money changing problem.  (AR 1219.)

///

///

The records review section of the opinion only lists a self-report questionnaire and a December 1, 2015 note from Dr. Kelso in which Plaintiff reported muscle spasms in her hands and feet and pain.  (AR 1220.)

Dr. Glassman diagnosed Plaintiff with general anxiety disorder, dysthymic disorder, and methamphetamine and alcohol dependence in remission. (AR 1220.)  He finds "she has mild impairment in her capacity to behave in a socially appropriate manner, given her significant anxiety."  (AR 1221.)  "She has mild impairment in her capacity to understand and follow instructions consistently [and] mild impairment in her capacity to maintain concentration, persistence, and pace."  (AR 1221.)  He also finds she has mild impairment in "adapt[ing] to changes and stresses in a workplace setting."  (AR 1221.)  He indicates "[c]onsistent mental health treatment and ongoing substance abuse treatment could help decrease her symptoms and improve her functioning."  (AR 1221.)

The ALJ gives full weight to Dr. Glassman's opinion.  (AR 52.)  The mild impairments noted above are specifically summarized in the ALJ decision.  (AR 52.)  The decision notes Dr. Glassman's findings of mild impairment in capacity to behave in a socially appropriate manner, understand and follow instructions consistently, adapt to changes and stresses in a workplace, and maintain concentration, persistence, and pace. (AR 52.)  The ALJ also explains that "Dr. Glassman is an accepted medical source who examined the claimant directly and his conclusions are consistent with the bulk of the evidence in the record."  (AR 52.)

### 4.  Dr. Tang

Dr. Tang provided an opinion dated August 17, 2019.  (AR 16.)  The opinion indicates that Plaintiff's course of treatment has been consistent with her symptoms and limitations, and that the functional limitations detailed in the opinion are "consistent with the clinical and/or objective findings" in the opinion.  (AR 17, 20.)  The opinion states that Plaintiff's symptoms and limitations detailed in the opinion apply as far back as April 7, 2016.  (AR 20.)  However, Dr. Tang specifically notes that Plaintiff's care was

transferred to her primary care physician, and he had not seen her since December 11, 2017.  (AR 20.)

Dr. Tang identifies the following diagnoses: bilateral sacroiliac joint pain; cervical myofascial pain syndrome; lumbar myofascial pain syndrome, history of cervical fusion; obstructive sleep apnea.  (AR 16.) He cites Plaintiff's MRI cervical spine as a clinical finding supporting these diagnoses.  (AR 16.)  The opinion indicates Plaintiff's impairments are ongoing and expected to last at least 12 months, and that Plaintiff is not a malingerer.  (AR 16.)  Joint and muscle pain of the neck and lower back are described as Plaintiff's primary symptom.  (AR 17.)  The frequency of pain is described as persistent and aggravating factors are poor sleep, depressive mood, and decreased activity.  (AR 17.)  Her prescribed pain medications are listed and the opinion identifies additional treatment she has received:  epidural injections; sacroiliac joint injections; physical therapy; and cognitive behavioral therapy.  (AR 17.)

Dr. Tang indicates that Plaintiff can perform a job in a seated position 1-3 hours and perform a job standing and/or walking 1-2 hours.  (AR 18.)  The opinion indicates it is not medically necessary for Plaintiff to avoid continuous sitting or elevate her legs while sitting.  (AR 18.)  Dr. Tang specifically indicates the amount of weight Plaintiff can lift or carry "can't [be] determine[d]" because Plaintiff "needs to be tested for this" and "[Kaiser Permanente] does not perform this test."  (AR 18.)  He indicates that Plaintiff does not have significant limitations in reaching, handling, or fingering. (AR 19.)  As to attention and concentration, the opinion indicates that Plaintiff's symptoms will be severe enough to interfere with her attention and concentration occasionally, one third of an 8-hour workday, and she will need to take unscheduled breaks at unpredictable intervals. (AR 19.)  Dr. Tang also indicates Plaintiff will likely be absent from work as a result of impairments or treatment two to three times a month.  (AR 20.)

This opinion was submitted to the Appeals Council after the ALJ decision was issued.  The Appeals Council's decision indicates "[w]e considered the reasons and exhibited them on the enclosed Order of the Appeals Council" and then, as to Dr. Tang's

opinion as well as other "additional evidence" the decision indicates "we find this evidence does not show a reasonable probability that it would change the outcome of the decision.  We did not exhibit this evidence."  (AR 1-2.)  The Appeals Council decision does not address the timing of Plaintiff's submission of the evidence.

## B.   Rejection of Treating Physician Opinions

Plaintiff argues the ALJ erred in not giving controlling weight to the opinions of two of Plaintiff's treating physicians, Dr. Harvey and Dr. Kelso.  (ECF 14-2 at 21-30.)  Plaintiff additionally argues that even if they were not entitled to controlling weight, the ALJ erred in not weighing the opinions using the factors in 20 C.F.R. § 404.1527(c)(2)-(6).

### 1.   Applicable Standards

The Ninth Circuit "distinguishes among the opinions of three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (non-examining physicians).[5] *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995).  "'As a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the claimant,'" and "the opinion of an examining physician is entitled to greater weight than that of a non-examining physician." *Garrison*, 759 F.3d at 1012 (quoting *Lester*, 81 F.3d at 830 and citing *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008)).  "Because treating

---

[5] Because Plaintiff's "claim was filed prior to the Commissioner's revision of the rules for evaluating medical evidence at the administrative level," it is subject to the standards set forth in § 404.1527. *Smith v. Kijakazi*, 14 F.4th 1108, 1114 n.3 (9th Cir. 2021). The standards set forth here, including that a treating physician opinion is generally given greater weight and sometimes controlling weight, are the standards applicable to a claim filed before March 27, 2017.  20 C.F.R. § 404.1520c ("For claims filed before March 27, 2017, the rules in [20 C.F.R.] § 1527 apply.")  As noted above, Plaintiff's claim was filed prior to March 27, 2017.  Claims filed on or after March 27, 2017 are subject to § 404.1520c's revised rules which do "not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s)."  § 404.1520c.

physicians are employed to cure and thus have greater opportunity to know and observe the patient as an individual their opinions are given greater weight than the opinions of other physicians." *Smolen v. Chater*, 80 F.3d 1273, 1285 (9th Cir. 1996) (citing *Rodriguez v. Bowen*, 876 F.2d 759, 761-62 (9th Cir. 1989); *Sprague v. Bowen*, 812 F.2d 1226, 1230 (9th Cir. 1987)).

Here, the physician opinions at issue were provided by Dr. Kelso and Dr. Harvey. Both are treating physicians.  The medical opinion of a claimant's treating physician is given "controlling weight" so long as it "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record." 20 C.F.R. § 404.1527(c)(2).

"Even if a treating physician's opinion is contradicted . . . [t]he ALJ is required to consider the factors set out in 20 C.F.R. § 404.1527(c)(2)-(6) in determining how much weight to afford the treating physician's medical opinion." *Ghanim v. Colvin*, 763 F.3d 1154, 1161 (9th Cir. 2014) (citing *Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007)); *see also Trevizo v. Berryhill*, 871 F.3d 664, 675 (9th Cir. 2017) ("When a treating physician's opinion is not controlling, it is weighted according to factors such as the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability, consistency with the record, and specialization of the physician.") (citing § 404.1527(c)(2)-(6)).

"To reject the uncontradicted opinion of a treating or examining doctor, an ALJ must state clear and convincing reasons that are supported by substantial evidence." *Trevizo*, 871 F.3d at 675 (quoting *Ryan*, 528 F.3d at 1198).  "If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Id.* (quoting *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005); *see also Ford v. Saul*, 950 F.3d 1141, 1154 (9th Cir. 2020) (citing *Lester*, 81 F.3d at 830). "The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating [his] interpretation thereof, and making findings." *Tommasetti v.*

*Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008) (quoting *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989)).  The ALJ "must set forth his own interpretations and explain why they, rather than the [treating or examining] doctors, are correct." *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998).

### 2.  Analysis

Plaintiff argues the ALJ erred in not giving controlling weight to the treating physician opinions of Dr. Kelso and Dr. Harvey, and even if they were not entitled to controlling weight, the ALJ erred in not considering the § 404.1527(c)(2)-(6) factors.  As to each treating physician opinion, the Court first determines whether each was entitled to controlling weight and the applicable standard – specific and legitimate or clear and convincing.  The Court then considers whether the applicable standard was met and if the ALJ considered the § 404.1527(c)(2)-(6) factors in giving each minimal weight or no weight.

As detailed below, the Court finds: (1) the specific and legitimate reasons standard applies; (2) most of the reasons provided by the ALJ for giving the treating physician opinions minimal or no weight were erroneous; and (3) the ALJ committed reversable error in not considering the § 404.1327(c)(2)-(6) factors as to Dr. Harvey's and Dr. Kelso's opinions.

### a)  Dr. Harvey

The Court finds Dr. Harvey's treating physician opinion was contradicted by Dr. Glassman's examining physician opinion, although the ALJ erred in giving Dr. Harvey's opinion minimal weight and in failing to consider the § 404.1527(c)(2)-(6) factors ALJ's must consider "in determining what weight to accord the opinion of the treating physician." *Orn*, 495 F.3d at 632.

### (1)  Contradicted

The portion of the ALJ's decision addressing Dr. Harvey's opinion begins by briefly noting Dr. Harvey's findings that Plaintiff has serious limitations in completing a workday and workweek without interruptions from psychologically based symptoms,

performing at a consistent pace without an unreasonable number and length of rest periods, and understanding and remembering, and carrying out detailed instructions. (AR 53.) He then gives two reasons for giving Dr. Harvey's opinion minimal weight. "The opinion of Dr. Harvey is given minimal weight because she ignored the claimant's history of missed or cancelled appointments and noncompliance with medications." (AR 53.) "Further, Dr. Harvey's conclusions are not consistent with the findings of Dr. Glassman." (AR 53.) The decision then notes Dr. Glassman's findings that Plaintiff was not exhibiting psychotic symptoms, could follow instructions and behave in a socially appropriate manner, of average intellectual functioning, and alert and oriented as to person, place, and situation. (AR 53.)

Plaintiff identifies the reasons given by the ALJ for giving minimal weight to the treating physician opinion of Dr. Harvey and then explains why those reasons were wrong.[6] Although Plaintiff challenges the ALJ's reasons for rejecting Dr. Harvey's opinion, Plaintiff does not specifically reference the clear and convincing or specific and legitimate standards applicable to uncontradicted and contradicted opinions respectively. *Trevizo*, 871 F.3d at 675 (Explaining clear and convincing standard applies to uncontradicted treating physician opinions and specific and legitimate standard applies to contradicted treating physician opinions).[7] The Court first addresses whether Dr.

-------

[6] Plaintiff challenges both reasons given by the ALJ for giving minimal weight to Dr. Harvey's treating physician opinion. (ECF 14-2 at 22, 28-29). However, the Court need not address the ALJ's rejection of Dr. Harvey's opinion based on allegedly ignoring a history of missed appointments and noncompliance with medication. "The Commissioner concedes that the ALJ did not appear to adequately explain or support this rationale." (ECF 15 at 10 n.5.)

[7] In the section addressing the medical opinions, Defendant identifies the specific and legitimate reasons standard. (ECF 15 at 7 ("The ALJ set forth specific and legitimate reasons explaining why he concluded that the weight of the evidence did not support limitations beyond Plaintiff's RFC.").)

Harvey's opinion was contradicted and then considers whether the ALJ erred in not considering the § 404.1527(c)(2)-(6) factors as to Dr. Harvey's opinion.

Plaintiff raises a number of errors in the ALJ's reliance on Dr. Glassman's opinion to give minimal weight to Dr. Harvey's opinion, including relying on the same clinical findings to reach different conclusions, documenting similar clinical findings but reaching different conclusions, and Dr. Glassman's opinion not considering any of Plaintiff's treatment records in violation of 20 C.F.R. § 404.1517. (ECF 14-2 at 29.) Defendant notes that Dr. Glassman's opinion was based on a comprehensive examination and evaluation of Plaintiff and found only mild impairments in cognition and social functioning. (ECF 15 at 12.) Defendant also notes normal or less severe findings from Plaintiff's medical records. (ECF 15 at 12-14.)

"If there is 'substantial evidence' in the record contradicting the opinion of the treating physician, the opinion of the treating physician is no longer entitled to 'controlling weight.'" *Orn*, 495 F.3d at 632 (citing 20 C.F.R. § 404.1527(d)(2)). "When an examining physician relies on the same clinical findings as a treating physician, but differs only in his or her conclusions, the conclusions of the examining physician are not 'substantial evidence.'" *Id.* "By contrast, when an examining physician provides 'independent clinical findings that differ from the findings of the treating physician,' such findings are 'substantial evidence.'" *Id.* (citations omitted). Here, the Court must first consider whether Dr. Glassman relied on the same clinical findings as Dr. Harvey, but reached a different conclusion (not substantial evidence), or if Dr. Glassman provided independent clinical findings that differed from the findings of Dr. Harvey's (substantial evidence). "Independent clinical findings can be either (1) diagnoses that differ from those offered by another physician and that are supported by substantial evidence, or (2) findings based on objective medical tests that the treating physician has not herself considered." *Id.*

This initial analysis only determines whether Dr. Harvey's opinion is contradicted or uncontradicted, not whether the ALJ erred in giving it minimal weight. *Id.* at 632-33

1    "Even when contradicted by an opinion of an examining physician that constitutes

2    substantial evidence, the treating physician's opinion is "still entitled to deference . . .

3    [and] [i]n many cases, a treating source's medical opinion will be entitled to the greatest

4    weight and should be adopted, even if it does not meet the test for controlling weight."

5    "[T]he ALJ may not reject [a contradicted opinion] without providing specific and

6    legitimate reasons supported by substantial evidence.  *Reddick*, 157 F.3d 715, 725 (9th

7    Cir. 1998) (citations omitted).

8        As discussed above (*see supra* V.A.2), Dr. Harvey found Plaintiff was seriously

9    limited and unsatisfactory in her ability to perform at a consistent pace without an

10   unreasonable number and length of rest periods, deal with normal work stress, understand

11   and remember detailed instructions and carry out detailed instructions.[8]  (AR 1642-43.)

12   There is no indication in Dr. Harvey's opinion that she considered Dr. Glassman's

13   evaluation of Plaintiff.  Dr. Glassman found Plaintiff was only mildly impaired in her

14   ability to behave in a socially appropriate manner, get along with others, and adapt to

15   changes and stresses in a workplace setting.  (AR 1221.)

16       As to Plaintiff's argument that Dr. Glassman documented similar clinical findings

17   to Dr. Harvey and only reached different conclusions, the Court would agree there are

18   some similarities.  (ECF 14-2 at 29.)  Their diagnoses are similar and Dr. Glassman found

19   Plaintiff "considerably anxious, with considerable psychomotor agitation, . . . speech was

20   rapid and pressured, and there was a 'hyper' frantic quality, with difficulty calming and

21   self-soothing."  (AR 1219.)  However, he also notes she was "well-engaged," "behavior

22   was socially appropriate," and "[h]er thought processes were otherwise coherent,

23   relevant, and goal-directed."  (AR 1219.)  There is certainly some overlap, but Dr.

24   Glassman did not document the same clinical findings and only reach different

25   conclusions.

26   _____

27

28   [8] As to these three impairments, it appears Plaintiff's limitations fall somewhere between
     seriously limited and limited because both are marked as applicable to Plaintiff.

Given the differences, the primary issue is whether Dr. Glassman provided "independent clinical findings." *Orn*, 495 F.3d at 632. Dr. Glassman provided a disability evaluation that included interviewing Plaintiff regarding her medical history, medications, activities, and social history and providing a mental status examination that included a number of tests summarized in the opinion. (AR 1217-19.) He then identifies her diagnoses and indicates she has mild impairments and the capabilities noted above. (AR 1221.)

The Court finds Dr. Glassman's opinion includes "independent clinical findings" because his "findings [were] based on objective medical tests that the treating physician has not herself considered." *Orn*, 495 F.3d at 632. Because Dr. Glassman's examining physician opinion "provides independent clinical findings that differ from the findings of the treating physician, such findings are substantial evidence." *Id.* This means Dr. Harvey's opinion was contradicted and not entitled to controlling weight. *Id.*

### (2)    Consideration of § 404.1527(c)(2)-(6) Factors

However, the ALJ giving Dr. Harvey's opinion minimal weight based solely on its inconsistency with Dr. Glassman's conclusions was erroneous. "First, the ALJ erred by failing to apply the appropriate factors in determining the extent to which the opinion should be credited." *Trevizo*, 871 F.3d at 676. Early in the decision, the ALJ states "[t]he undersigned has . . . considered opinion evidence in accordance with the requirements of 20 CFR 404.1527," but does not otherwise address the factors in § 404.1527(c)(2)-(6) as to Dr. Harvey's opinion except for the inconsistency between the two opinions, 20 C.F.R. § 404.1527(c)(4). There is no indication that the ALJ considered "factors such as the length of the treating relationship, the frequency of examination, the nature and extent of the treatment relationship, the supportability of the opinion," or Dr. Harvey's specialty, a psychiatrist. *Trevizo*, 871 F.3d at 676 (citing § 404.1527(c)(2)-(6)); § 404.1527(c)(5) ("We generally give more weight to the medical opinion of a specialist about medical issues related to his or her area of specialty than to the medical opinion of a source who is not a specialist).

1    Section 404.1527 indicates that "[u]nless we give a treating source's medical
2   opinion controlling weight under paragraph (c)(2) of this section, we consider all of the
3   following factors in deciding the weight we give to any medical opinion."
4   § 404.1527(c)(1).  Failing to "consider factors such as length of the treating relationship,
5   the frequency of examination, the nature and extent of the treatment relationship or the
6   supportability of the opinion . . . constitutes reversible legal error." *Trevizo*, 871 F.3d at
7   676.

8    Plaintiff argues the ALJ failed to consider the factors (ECF 14-2 at 21-22, 25, 30),
9   and Defendant argues that "the term 'consider' does not equate to explicitly articulating
10   findings."  (ECF 15 at 9.)  In short, Defendant argues the ALJ is not required to "formally
11   articulate each of those factors in every decision."  (ECF 15 at 9.)

12    The Court agrees with other courts in this district and unpublished decisions from
13   the Ninth Circuit that have found the ALJ is not required to "engage in a full-blown
14   written analysis of all these regulatory factors" but "they must show 'some indication'
15   that they considered each one."  *Schuh v. Saul*, Case No. 18-cv-1398-GPC-AGS, 2019
16   WL 4729642, at * 8 (S.D. Cal. September 27, 2019) (quoting *Hoffman v. Berryhill*, 2017
17   WL 3641881, at *4 (S.D. Cal. Aug. 24, 2017), adopted, 2017 WL 4844545 (Sept. 14,
18   2017); *see also Andrea A. v. Saul*, Case No. 19-cv-1873-BEN-MDD, 2020 WL 7346657,
19   at *8 (S.D. Cal. Aug. 25, 2020); *see also Kelly v Berryhill*, 732 Fed. Appx. 558, *562-63
20   n.4 (9th Cir. May 1, 2018) (Finding ALJ erred in "failing to consider the factors outlined
21   in 20 C.F.R. § 404.1527(c)(2)-(6) in assessing a treating physician's opinion and
22   indicating in a footnote "the dissent correctly states that the ALJ is not required 'to make
23   an express statement that she considered all the factors outlined in 20 C.F.R.
24   § 404.1527(c)(2-(6).").

25    To be clear, the Court is not finding the ALJ was required to expressly address
26   each individual factor.  That certainly did not happen here.  However, there is also no
27   indication that the ALJ considered any other factors in assessing Dr. Harvey's opinion.
28   As discussed above, the ALJ provided only two reasons for giving her opinion minimal

20-cv-0984-AJB-BGS

weight and one was concededly not supported, leaving only her opinion being inconsistent with Dr. Glassman's.  He does not indicate she is a treating psychiatrist or otherwise acknowledge any treating relationship with Plaintiff, and there is no discussion of whether the opinion is or is not supported by the medical records.  Not considering the supportability of a treating psychiatrist's opinion is particularly erroneous omission here because the only reason given for giving Dr. Harvey's opinion minimal weight was that it was inconsistent with Dr. Glassman's opinion.  And Dr. Glassman's opinion was not based on any of Plaintiff's medical records during the relevant period.  While he conducted his own evaluation, it lacked any support in her medical records because he did not review them.  The only records provided to Dr. Glassman were a "self-report questionnaire" and "a typed note[] . . . from Christine Kelso, M.D. . . . from December 1, 2015."  (AR 1220.)[9]

Here, the absence of consideration of the factors resulted in the ALJ rejecting a treating specialist's opinion based solely on an examining physician opinion that did not consider more than 16 months of medical history regarding mental impairments, including diagnoses, evaluations, prescriptions to treat depression and anxiety, changes to those prescriptions, and medical notes documenting her mental health status over time. (AR 659 (diagnosed with anxiety and mood disorder no later than September 21, 2015; AR 716 (prescribed Effexor January 22, 2016); AR 719 (noting evaluation by psychiatry and evaluation for ADD and "per usual she is quite scattered and has a hard time giving a history"); AR 802 (noting continuing anxious affect and nervous mood).)

Although the Court need not address these issues further because of the reversible errors noted above, the Court notes that giving minimal weight to Dr. Harvey's opinion

---

[9] The opinion reflects that Dr. Glassman was providing his report based on what he was provided.  It appears Dr. Glassman was simply not provided with any of Plaintiff's medical records including those addressing her mental health diagnoses as required by § 404.1517 ("If we arrange for [mental examinations or tests] [w]e will . . . give the examiner any necessary background information about your condition."

because of its inconsistency with Dr. Glassman's was not a specific and legitimate reason supported by substantial evidence.  The ALJ relied on an examining physician opinion that lacked consideration of 16 months of medical records to reject a treating psychiatrist's opinion that was based on a treating relationship without acknowledging the treating relationship.  *See Garrison*, 759 F.3d at 1013 (Finding error with ALJ's reliance on consultant that lacked access to treatment records and failure to afford deference to a treating physician opinion).  The ALJ also failed to give any deference to Dr. Harvey's opinion or explain why he did not give it deference.  *See id.* (Finding error with ALJ failing to afford deference to a treating physician opinion).  Additionally, the ALJ selectively picked Dr. Glassman's positive comments about Plaintiff's demeanor and rapport and ignored his findings that Plaintiff was "considerably anxious, with considerable psychomotor agitation, . . . speech was rapid and pressured, and there was a 'hyper' frantic quality, with difficulty calming and self-soothing." *Ghanim*, 763 F.3d at 1164 ("[The ALJ improperly cherry-picked some of [a physician's] characterizations of [the claimant's] rapport and demeanor instead of considering these factors in the context of [the physician's] diagnoses and observations of impairment.").

While an inconsistency with an examining physician opinion might constitute a specific and legitimate reason to reject a treating physician opinion under some circumstances, here, the ALJ did not explain why he rejected the treating psychiatrist's opinion, to which deference is owed, in favor of Dr. Glassman's opinion based on a single interview and no medical records.

The ALJ erred in failing to consider the § 404.1527(c)(2)-(6) factors and giving minimal weight to the opinion of Plaintiff's treating psychiatrist.  As discussed above and further below, these errors were not harmless. (*See infra* V.E.)

### a)    Dr. Kelso

The Court finds Dr. Kelso's treating physician opinion was not entitled to controlling weight because it was contradicted by two nonexamining physician opinions and some evidence in the record, but the ALJ erred in failing to consider the

§ 404.1525(c)(2)-(6) factors as required when a treating physician opinion is not entitled to controlling weight and erred as the reasons given for rejecting Dr. Kelso's opinion.

### (1)     Contradicted

Plaintiff identifies reasons given by the ALJ for giving no weight to the treating physician opinion of Dr. Kelso and then explains why those reasons were wrong.  As with Dr. Harvey's opinion, Plaintiff challenges the ALJ's reasons, but does not specifically address whether the ALJ's reasons must meet the clear and convincing or the specific and legitimate standard. *Trevizo*, 871 F.3d at 675.

As explained above, the applicable standard depends on whether the physician opinion is contradicted by substantial evidence in the record.  Here, Dr. Kelso's opinion was contradicted by two nonexamining physicians, notably so in terms of Plaintiff's ability to lift and carry items as well as in postural limitations.  Dr. Kelso found Plaintiff could only sit two hours out of an eight-hour workday, stand/walk a total of one hour in an eight-hour workday and would sometimes need to lie down during an eight-hour workday.  (AR 1636.)  While Dr. Kalmar found she could stand, walk, or sit for a total of six hours in an eight-hour workday.  (AR 126.)  In terms of lifting and carrying, Dr. Kelso found Plaintiff significantly limited, unable to carry any amount of weight, (AR 1637-38) while Dr. Kalmar found she could occasionally lift 20 pounds and frequently lift 10 pounds.  (AR 126.)  Additionally, as discussed in more detail below, the ALJ also identified a medical record he found inconsistent with Dr. Kelso's opinion, at least as to Plaintiff being unable to lift or carry any amount of weight.  (*See infra* V.B.2.a)(3)(c).) "If there is 'substantial evidence' in the record contradicting the opinion of the treating physician, the opinion of the treating physician is no longer entitled to 'controlling weight.'" *Orn*, 495 F.3d at 632 (citing 20 C.F.R. § 404.1527(d)(2)).  As noted above, finding Dr. Kelso's opinion contradicted does not necessarily mean it is not "still owed deference" or is not "entitled to the greatest weight." *Garrison*, 759 F.3d at 1012.  A contradicted treating physician opinion "will often be entitled to the greatest weight . . . even if it does not meet the test for controlling weight." *Id.*

1    Because the Court finds that in at some respects Dr. Kelso's opinion was

2 contradicted by two non-examining physicians' opinions and other evidence in the

3 record, it was not entitled to controlling weight and the ALJ was required to consider the

4 § 404.1527(c)(2)-(6) factors. *Trevizo*, 871 F.3d at 675-76.

5                  **(2)      Consideration of § 404.1527(c)(2)-(6) Factors**

6    The ALJ's analysis indicates that he considered only two of the § 404.1527(c)(2)-

7 (6) factors.  As thoroughly discussed above, (*see supra* V.B.2.a)(2)), the ALJ is not

8 required "engage in a full-blown written analysis of all the regulatory factors," but "they

9 must show 'some indication' that they considered each one." *Schuh*, 2019 WL 4729642,

10 at *8 (citations omitted); *see also* § 404.1527(c) ("Unless we give a treating source's

11 medical opinion controlling weight under paragraph (c)(2) of this section, we consider all

12 of the following factors in deciding the weight we give to any medical opinion.").  The

13 factors are examining relationship, treating relationship, including length of the treatment

14 relationship, frequency of examination, and the nature and extent of the treatment

15 relationship, as well as supportability, consistency, and specialization.  20 C.F.R. §

16 404.1527(c)(2)-(6).

17    Here, the Court finds the ALJ did consider two of the factors, consistency and

18 supportability, but did not consider the other factors.  The ALJ notes the lack of a

19 particular test in support of peripheral neuropathy, references a physical exam showing

20 mild findings as to active range of motion, and points to a prior medical note the ALJ

21 finds in conflict with the opinion.  (AR 52.)  The consistency factor evaluates how

22 "consistent a medical opinion is with the record as a whole." § 404.1527(c)(4).

23 Supportability considers the evidence in support, "particularly medical signs and

24 laboratory findings." § 404.1527(c)(3).  Even though not explicitly stated, the Court can

25 find the ALJ considered the supportability and consistency of Dr. Kelso's opinion.

26    The Court can also find that the ALJ knew Dr. Kelso was a treating physician

27 because he referred to her as such.  However, there is no indication that the length of the

28 treating relationship, frequency of examination, or nature and extent of the treatment

relationship were considered at all.  This is of some significance because Dr. Kelso's opinion explicitly indicated she had been treating Plaintiff since 2015, had most recently examined Plaintiff on September 5, 2018, and had personally seen her 29 times over those three years.  (AR 1634.)  While it might not be necessary to address these factors when they are of no significance, the absence of any acknowledgment of them when they were significant is particularly problematic.  Here, the ALJ was rejecting the opinion of a treating physician that had been treating Plaintiff regularly for years and does not acknowledge that relationship in any respect.  The ALJ decision also does not acknowledge Dr. Kelso is a specialist, internal medicine, despite that also being reflected in the opinion.  (AR 1639.)

In addition to not having considered the factors that must be considered, the Court notes that not considering these factors led to errors.  For example, as discussed below, the ALJ rejected Dr. Kelso's opinion because it indicated that Plaintiff's physical symptoms were worse as a result of her mental health symptoms.  (AR 52.)  He found the treating internal medicine doctor that treated Plaintiff for her mental health impairments prior to her treating psychiatrist "unqualified" to opine on these issues.  (AR 52.)  Not only was this an erroneous basis to reject her opinion, but it also reflects the ALJ was not aware of or gave any consideration to the treating relationship, frequency of examination, or nature and extent of the treatment relationship.

"[T]he ALJ erred by failing to apply the appropriate factors in determining the extent to which the opinion should be credited." *Trevizo*, 871 F.3d at 676.  This was reversible error. *Id.*

### (3)    Substantial Evidence

In addition to considering the § 404.1527(c)(2)-(6) factors, the ALJ was required to provide specific and legitimate reasons supported by substantial evidence for rejecting Dr. Kelso's opinion. *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995).  "[W]here a nontreating source's opinion contradicts that of the treating physician, the opinion of the treating physician may be rejected only if the ALJ gives *specific legitimate reasons*

1  *for doing so that are based on substantial evidence in the record*." *Id.* (emphasis added);
2  *see also Ford*, 950 F.3d at 1154 (Finding ALJ could reject a treating physician opinion
3  regarding a claimant's functional capacity when it was contradicted by the reports of two
4  non-examining physicians). However, the nonexamining physician opinions cannot alone
5  be the basis for rejecting a treating or examining physician opinion.  *Lester*, 81 F.3d at
6  833 ("The nonexamining medical advisor's testimony does not by itself constitute
7  substantial evidence that warrants rejection of either the treating doctor's or examining
8  psychologist's opinion.")

9        In the course of arguing the ALJ should have given Dr. Kelso's opinion controlling
10  weight, Plaintiff identifies the following as erroneous reasons given by the ALJ for
11  rejecting Dr. Kelso's opinion: finding the opinion at issue conflicted with an earlier
12  record; finding Dr. Kelso unqualified to opine on impact of mental health impairments;
13  and that her opinions were based primarily on Plaintiff's subjective complaints rather
14  than the diagnostic testing.  (ECF 14-2 at 22-25.)  Defendant argus the ALJ appropriately
15  relied on Dr. Kelso's October 17, 2018 opinion conflicting with her June 13, 2017
16  medical note, normal findings in key physical areas; the absence of medical findings in
17  support of Dr. Kelso's opinion, and Dr. Kelso's opinion conflicting with the opinions of
18  nonexamining state agency physician opinions.  (ECF 15 at 6-12.)

19                              **(a)      Conflict with June 13, 2017 Medical Note**

20        The ALJ rejected Dr. Kelso's opinion that Plaintiff could never lift/carry any
21  weight, could stand/walk for one hour in an eight-hour workday, effectively precluded
22  from reaching, handling, and fingering bilaterally, and needed to frequently take breaks
23  because "Dr. Kelso backdated her opinion to the period beginning December 2, 2016, but
24  in June 2017 Dr. Kelso reported in her treatment notes that 'I am not ready to place her
25  on permanent disability for pain and anxiety.'" (AR 52 (citing AR 1513 [Ex. 12F at 49]).)
26  He also indicates "Dr. Kelso['s] statement in June 2017 affirmatively demonstrated that
27  Dr. Kelso based her statement on subjective complaints of pain and a subjective history
28  of anxiety."  (AR 52.)

In challenging this reason, Plaintiff accurately notes that the ALJ selectively quoted Dr. Kelso's June 13, 2017 note.  Following her statement that she was not placing her on permanent disability, she states, "however, I imagine she will likely stay on long-term disability for at least another 6 months, possibly longer."  (ECF 14-2 at 23 (quoting AR 1513).)  Plaintiff goes on to argue this statement was not inconsistent with Dr. Kelso's October 2018 opinion 16 months later, but rather suggested Dr. Kelso was being careful before declaring Plaintiff permanently disabled.  Additionally, Plaintiff argues an "individual need not have a 'permanent disability' to be entitled to Social Security disability benefits, only a disability that lasts at least 12 months."  (ECF 14-2 at 23.) Defendant argues the ALJ properly found that Dr. Kelso's opinion conflicted with her own previous finding.

Neither party specifically addresses the ALJ's characterization of Dr. Kelso's opinion as being "backdated," but to be clear, the opinion is dated October 17, 2018, not December 2, 2016.  December 2, 2016 appears in response to the question "[w]ithin a reasonable degree of medical certainty, what is the earliest date that this description of symptoms and limitations applies to?" (AR 1639.)  Neither party has expanded on how the June 13, 2017 note conflicts with the October 17, 2018 opinion beyond noting the ALJ's statement.  Tracking the only explanation given by the ALJ – that Dr. Kelso did not place her on permanent disability on June 13, 2017 – the Court can only deduce that the ALJ considered her condition as described in the October 17, 2018 opinion which should have warranted placing her on "permanent disability for pain and anxiety" in June 13, 2017 which created a conflict.  (AR 52.)

However, the June 13, 2017 medical note the ALJ relies on is not inconsistent because it was describing Plaintiff's condition at that particular time and the October 17, 2018 opinion is describing her condition then, and looking back.  The December 2, 2016 answer can only be based on looking back at her condition over the many prior years of treatment, including since June 13, 2017.  Additionally, when the entire sentence the ALJ has parsed apart is considered, the lack of conflict is even more apparent.  In the same

sentence she says she is not ready to place her on permanent disability, she says "however, I imagine she will likely *stay on long-term disability* for at least another 6 months, *possibly longer*." (AR 1513 (emphasis added).) On this record, the Court cannot find the opinion and medical notes inconsistent. *See Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999)("[T]he Commissioner's decision cannot be affirmed simply by isolating a specific quantum of supporting evidence," but must be based on "both evidence that supports and detracts from the Commissioner's decision."). If anything, this medical note indicating she was expected to remain on disability for more than six months supports Dr. Kelso's later determination that Plaintiff had been disabled or was expected to be disabled for more than 12 months. (AR 1635.)

Because the June 13, 2017 medical note is not in conflict with the October 17, 2018 opinion, it does not constitute substantial evidence in support of rejecting Dr. Kelso's treating physician opinion. *Lewis v. Apfel*, 236 F.3d 503, 509 (9th Cir. 2001) (citing *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999) ("Substantial evidence is relevant evidence that, considering the entire record, a reasonable person might accept as adequate to support a conclusion.").

The Court finds the ALJ erred in rejecting Dr. Kelso's opinion based on this alleged inconsistency.

### (b)   Unqualified

One of the reasons the ALJ gave for giving Dr. Kelso's opinion no weight was that it was based "in part on psychological conditions for which she is unqualified to opine." (AR 52.) The ALJ does not expand on this point, but the Court's own review reflects that Dr. Kelso's opinion only minimally addresses Plaintiff's mental impairments and only for purposes of noting they impact her physical symptoms. Specifically, Dr. Kelso notes generalized anxiety disorder with PTSD in listing Plaintiff's diagnoses along with others. (AR 1634.) Dr. Kelso also indicates that "severe anxiety and PTSD make symptoms worse/more pronounced." (AR 1635.) Essentially, she finds Plaintiff's physical

limitations, on which Dr. Kelso is opining as Plaintiff's primary care treating physician, are worsened by her mental impairments.

"The treating physician's continuing relationship with the claimant makes him especially qualified to evaluate reports from examining doctors, to integrate the medical information they provide, and to form an overall conclusion as to functional capacities and limitations, as well as to prescribe or approve the overall course of treatment." *Lester*, 81 F.3d at 833. "This is particularly true in cases . . . where the parts of the functional restrictions arising from the claimant's physical impairments cannot be separated from the parts arising from his mental impairments." *Id.* "Indeed, the treating physician's opinion as to the combined impact of the claimant's limitations—both physical and mental—is entitled to special weight." *Id.* (citing § 404.1527). The value of this "unique perspective" is also reflected in the § 404.1527(c) factors – treatment relationship, length of treatment, and nature and extent of treatment – that the ALJ failed to consider in evaluating Dr. Kelso's opinion. § 404.1527(c)(2).

As Plaintiff's treating and primary care physician, Dr. Kelso was well positioned to "form an overall conclusion as to functional capacities and limitations" and offer an opinion regarding whether Plaintiff's physical symptoms were worsened by mental impairments. *Lester*, 81 F.3d at 833. Instead of giving this opinion "special weight" or any weight at all, the ALJ cursorily finds her "unqualified" to offer her opinion because it takes into account the effect of mental health impairments on physical ones and rejects her opinion on that basis.[10] Additionally, the ALJ does not explain why he thinks her

---

[10] This treatment exemplifies the problems that can follow when an ALJ does not consider the 20 C.F.R. § 404.1527(c)(2) factors regarding the treatment relationship, particularly the length, nature, and extent of it. Had the ALJ considered Dr. Kelso's opinion might provide a "a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone," § 404.1527(c)(2), or considered how long Dr. Kelso treated Plaintiff or how many times he examined her over those years, he might not have found her "unqualified."

1   physical symptoms are not exacerbated by her mental health impairments.  In this

2   respect, he has rejected her opinion on this basis without any support.  *See Reddick*, 157

3   F.3d at 725 (The ALJ "must set forth his own interpretations and explain why they, rather

4   than the [treating or examining] doctors' are correct.").

5          The ALJ erred in rejecting her opinion on this basis.

6                          **(c)      Based on Plaintiff's Subjective Complaints**

7          Plaintiff argues the ALJ erred in rejecting Dr. Kelso's opinion because it was based

8   primarily on Plaintiff's subjective complaints rather than medical findings.  (ECF 14-2 at

9   22-23.)  Plaintiff argues this is "directly contradicted by the record," pointing to Dr.

10  Kelso specifying in her opinion that it was "based on diagnostic testing of an MRI of the

11  cervical spine and an EMG, as well as clinical evidence of muscle twitching and patchy

12  sensory lose to pinprick.  (ECF 14-2 at 22 (citing AR 1634).)  Plaintiff goes on to identify

13  treatment records, including Plaintiff's September 13 2016 MRI, an EMG revealing

14  carpel tunnel, and "examinations consistently document[ing] muscle twitching or other

15  muscle abnormalities and decreased sensation."  (ECF 14-2 at 22-23 (citing AR 597-99

16  (MRI to evaluation post-surgical hardware); AR 736-37 (EMG); AR 779, 797, 816, 851,

17  1336, 1998-99, 6708, 6766).)  Defendant does not specifically address the ALJ's

18  discounting of Dr. Kelso's opinion as being based on Plaintiff's subjective complaints

19  rather than these clinical examinations.  However, in addressing other issues, Defendant

20  argues the ALJ found Dr. Kelso failed to identify medical findings to support her

21  assessment of "extreme functional limitations," particularly Plaintiff not being able to lift

22  or carry any amount of weight and challenges Plaintiff's reliance on muscle twitching

23  and patchy sensory loss to pinprick translating to Plaintiff not being able to lift/carry any

24  amount of weight.  (ECF 15 at 8, 10.)

25         The ALJ finds Dr. Kelso "afforded too much weight to subjective complaints and

26  limitations provided by the claimant." (AR 52.)  He indicates that Dr. Kelso's opinion

27  was based on "a conversation in October 2018 as far as the things she could do or not

28  do." (AR 52.)  And, as noted above, he indicates that Dr. Kelso's June 2017 medical note

demonstrated Dr. Kelso "based her statement on subjective complaints of pain and a subjective history of anxiety."  (AR 52.)

"An ALJ may reject a treating physician's opinion if it is based *'to a large extent'* on a claimant's self-reports *that have been properly discounted as incredible*." *Tommasetti*, 533 F.3d at 1041 (citing *Morgan*, 168 F.3d at 602 (emphasis added)); *see also Buck v. Berryhill*, 869 F.3d 1040, 1049 (9th Cir. 2017) (quoting *Morgan*, 169 F.3d at 602 ("A physician's opinion of disability premised *to a large extent* upon the claimant's own accounts of his symptoms and limitations may be disregarded where *those complaints have been properly discounted*.") (emphasis added); *Ghanim*, 763 F.3d at 1162 ("If a treating provider's opinions are based *to a large extent* on an applicant's self-reports and not on clinical evidence, *and the ALJ finds the applicant non credible*, the ALJ may discount the treating provider's opinion."); *see also Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009) (concluding that the ALJ may properly reject the opinion of a treating physician that relies on a claimant's *unreliable* self-reports) (emphasis added).  However, "[w]hen an opinion is not more heavily based on a patient's self-reports than on clinical observations, there is no evidentiary basis for rejecting the opinion." *Ghanim*, 763 F.3d at 1162; *see also Ryan,* 528 F.3d at 1199-1200. Therefore, the important issues are whether the ALJ properly discounted Plaintiff's subjective symptoms testimony and whether Dr. Kelso's opinion was based to a large extent on Plaintiff's subjective complaints.

Applying these standards, it is not clear Dr. Kelso's opinion was based to a large extent on Plaintiff's own accounts of her symptoms, but even if they were, Dr. Kelso's opinion could only be disregarded on this basis "if th[e]se complaints have been properly discounted." *Buck*, 869 F.3d at 1049.  As explained below (*see infra* V.C), the ALJ did not properly discount Plaintiff's subjective symptom testimony.  However, even if her subjective complaints were properly discounted, the ALJ only established Dr. Kelso's opinion was based to a large extent on Plaintiff's self-reports as to the lift/carry limitations.

The Court is not persuaded by either reason explicitly provided by the ALJ, *i.e.* that the June 2017 note establishes it was based primarily on subjective complaints or that Plaintiff and Dr. Kelso had a conversation in October 2018 and that was the basis for Dr. Kelso's opinion rather than her three years of treating Plaintiff.  As noted above, the Court has found that the June 2017 medical note does not conflict with Dr. Kelso's October 17, 2018 opinion.  The Court is also unclear what, if any, conversation happened about what Plaintiff could and could not do,[11] and even if the conversation did happen, that such a conversation would mean a treating physician of over three years based their opinion to a large extent on what their patient told them.

Regarding clinical observations, as Plaintiff notes, Dr. Kelso's opinion lists medical tests in support of her conclusions regarding Plaintiff's limitations, including "MRI cervical spine with multilevel cervical spondylosis [and] neuroforaminal narrowing [and] and EMG with evidence of peripheral neuropathy." (AR 1634.)  Additionally, Dr. Kelso's opinion identifies positive clinical finding in support of her diagnoses, including "muscle twitching, mild patchy sensory loss to pin prick, severe anxiety – restlessness, tremor, easily tearful." (AR 1634.)  This suggests that Dr. Kelso's opinion was not based to a large extent on Plaintiff's self-reports rather than on clinical evidence. *See Ghanim*, 763 F.3d at 1162.

---

[11] The ALJ does not cite any record for this assertion.  However, the Court's own review of the record reflects that during the hearing, the ALJ asked Plaintiff about whether she had a conversation with Dr. Kelso that month, October, about things she could or could not do.  She initially responded "I see Dr. Kelso all the time," but after a further exchange she seems to indicate that she and Dr. Kelso had talked about things she could do an not do about a month prior. (AR 80.)  However, this is not entirely clear.  Plaintiff had an appointment with Dr. Kelso approximately a month prior, in September 2018, and may have just been agreeing that she saw her a month prior.  It is not clear from the transcript that she understood the ALJ was suggesting a conversation took place just for Plaintiff to tell Dr. Kelso what she could and could not do.  (AR 80-81.)

1    The Court notes the ALJ's more general challenge to Dr. Kelso's opinion that

2    Plaintiff could lift/carry no weight is another possible basis that might suggest Dr.

3    Kelso's opinion was too heavily based on Plaintiff's subjective complaints.  The ALJ's

4    analysis of Dr. Kelso's opinion overall conveys that the ALJ believes Dr. Kelso's

5    limitations as to Plaintiff's inability to lift any amount of weight are extreme.  The

6    challenge here is that the ALJ only accurately cites one medical record showing mild or

7    normal findings that would be inconsistent with Dr. Kelso's lift/carry limitations.[12]

8    While the single accurate citation to the medical records could not be considered

9    sufficient to "*consistently* show" no or minimal decreased range of motion or normal gait

10   and station (AR 52 (emphasis added)), the ALJ's earlier summary of the medical

11   evidence includes citations that emphasize normal or only mild limitations in range of

12   motion and normal gait and station. (AR 48 (citing AR 878 [Ex. 4F at 6], AR 6078 [Ex

13   35F at 107]), AR 49 (citing AR 6292 [Ex. 36F at 73], AR 7419 [Ex. 41F at 10], AR 7177

14   [Ex. 40F at 16].  As to Plaintiff's ability to lift/carry no amount of weight, this suggests

15   that Dr. Kelso's opinion may have been based more on Plaintiff's subjective reports than

16   on findings in Plaintiff's medical records.

17         Based on these records, the ALJ could conclude that Dr. Kelso's opinion that

18   Plaintiff could lift no amount of weight was "based to a large extent on [Plaintiff's] self-

19   reports" rather than clinical evidence." *Ghanim*, 763 F.3d at 1162.  "When evidence

20   reasonably supports either confirming or reversing the ALJ's decision, we may not

21   substitute our judgment for that of the ALJ." *Batson*, 359 F.3d at 1196.  However, as to

22   the other limitations in Dr. Kelso's opinion, there is no basis to establish Dr. Kelso relied

23   more heavily on Plaintiff's subjective complaints than clinical evidence.

24

25   _____

26   [12] The ALJ cites two medical notes. (AR 6708 [Ex. 38F at 46]; AR 7665 [Ex. 42F at 10].)

27   The first, a May 15, 2018 note from an appointment with Dr. Harris, indicates only
     mildly decreased active range of motion and full strength in the upper extremities.  (AR

28   6708.)  The second cite, also to a medical note, contains no information. (AR 7665.)

Notwithstanding, because Plaintiff's subjective symptoms testimony has not been properly rejected (*see infra* V.C), Dr. Kelso's reliance on Plaintiff's subjective symptom testimony was not a proper basis for giving Dr. Kelso's opinion no weight. *Buck*, 869 F.3d at 1049 ("A physician's opinion of disability premised to a large extent upon the claimant's own accounts of his symptoms and limitations may be disregarded *where those complaints have been properly discounted*.") (emphasis added). As discussed below, the ALJ did not properly discount Plaintiff's complaints.

The ALJ reversibly erred in failing to consider the § 404.1527(c)(2)-(6) factors. *Trevizo*, 871 F.3d at 676. As noted above, this error led to additional errors, including finding Plaintiff's treating primary care physician of three years "unqualified" to offer an opinion as to the impact of her mental impairments on her physical symptoms. Additionally, the other reasons discussed above for giving Dr. Kelso's opinion no weight did not constitute specific and legitimate reasons supported by substantial evidence. There was no conflict between Dr. Kelso's opinion and the June 13, 2017 medical note, and, as discussed below, having not properly rejected Plaintiff's subjective symptoms, the ALJ could not discount Dr. Kelso's opinion for relying too heavily on it.

As discussed above and further below, these errors were not harmless. (*See infra* V.E.)

## C. Rejection of Plaintiff's Testimony Regarding Symptoms

Plaintiff asserts the ALJ erred in concluding the objective evidence related to Plaintiff's physical and mental impairments did not support a disability finding, but even if it did, that the ALJ erred in relying solely on objective medical evidence to reject the severity of Plaintiff's symptoms. (ECF 14-2 at 30-32.) Additionally, Plaintiff argues the ALJ impermissibly rejected Plaintiff's testimony based on evidence of her character in violation of SSR 16-3p. (*Id.* at 32-33.)

### 1. Two-Step Process for Evaluation of Symptom Testimony

When evaluating a Plaintiff's impairment-related symptoms, ALJ's must follow a two-step process. *Trevizo*, 871 F.3d at 678 ("We have established a two-step analysis for

determining the extent to which a claimant's symptom testimony must be credited.");
*Garrison*, 759 F.3d at 1014 (citing *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2008); SSR 16-3p, 2017 WL 5180304, at *2-3.

At the first step, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Garrison*, 759 F.3d at 1014 (citations omitted); SSR 16-3p, 20017 WL 5180304, at *3. Here, there is no dispute as to step one. As explained below, the ALJ found Plaintiff's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms and there was no determination of malingering. (AR 47.)

When, as here, the claimant satisfies the first step and there is no determination of malingering by the ALJ, "the ALJ must provide 'specific, clear, and convincing reasons for' rejecting the claimant's testimony regarding the severity of the claimant's symptoms." *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1102 (9th Cir. 2014) (quoting *Smolen*, 80 F.3d at 1281); *Garrison*, 759 F.3d at 1014-15; *Parra v. Astrue,* 481 F.3d 742, 755 (9th Cir.2007) (citations omitted). The clear and convincing standard is the most demanding required in Social Security cases." *Garrison,* 759 F.3d at 1015 (quoting *Moore v. Comm'r of Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002). However, "[i]f the ALJ's credibility finding is supported by substantial evidence in the record, we may not engage in second-guessing." *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002) (citing *Morgan*, 169 F.3d at 600).

## 2. ALJ's Decision Regarding Plaintiff's Symptom Testimony

The ALJ decision notes the two-step process. (AR 47.) The ALJ then provides a brief summary of Plaintiff's testimony, including testimony regarding her educational and work history, her reports as to height and weight, and that she stopped working because she needed neck surgery. (AR 47.) The ALJ then states:

> The claimant alleged constant pain that radiated down to her arms and that she experienced constant headaches. She alleged difficulty putting her arms over

her head.  The claimant reported she has lumbar spondylosis that caused radiating pain in her hips and legs, making it hard for her to walk.  The claimant alleged neuropathy in her hands.  The claimant alleged anxiety being in public and talking to doctors.  The claimant alleged intermittent memory loss.

(AR 47.)

The ALJ then finds "the claimant's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not consistent with the medical evidence and other evidence in the record."  (AR 47.)

The ALJ finds "[a]s a threshold matter, the record shows the claimant made statements at hearing that were inconsistent with other evidence in the record." (AR 47.) The decision then identifies Plaintiff testifying that she had not use alcohol since 2016, but a treatment record from August 2018 indicating that Plaintiff had "admitted she was 'drinking again.'" (AR 47-48 (citing AR 7222).)  The ALJ then states, "[t]hus, the evidence in the record that contradicts the claimant's testimony at hearing that she stopped using alcohol in 2016."  (AR 48.)

The decision then summarizes Plaintiff's medical history with emphasis, by italicizing, on normal and mild findings in her medical records.  (AR 49-51.)  Although there are no specified categories of analysis, the summary generally groups the records by "cervical fusion and degenerative changes of the lumbar spine and hips," (AR 48-49), asthma (AR 49), weight (AR 50), and mental impairments (AR 50-51).  The ALJ concludes at the end of each of these general topics that the objective medical evidence failed to show the impairment "resulted in disabling functional limitations" (degenerative changes of the lumbar spine and hips and asthma) or "exceeded the residual functional capacity adopted herein" (weight and mental impairments).  (AR 49-51.)  Before moving on to the physician opinion evidence, the ALJ concludes "[o]verall, the undersigned finds that the objective medical evidence and the longitudinal record failed to support the claimant's allegations of disabling symptoms and limitations."  (AR 51.)

1
2
3

The Court first addresses whether the ALJ erred in finding Plaintiff not credible based on her statements regarding alcohol use and then considers whether the ALJ provided clear and convincing reasons for rejecting Plaintiff's symptom testimony.

### 3.   Credibility Under SSR 16-3p

4
5
6
7
8
9
10
11
12
13

Plaintiff very explicitly argues the ALJ erred in finding Plaintiff's testimony not credible based on her inconsistent statement regarding when she last used alcohol.  (ECF 14-2 at 32-33.)  Plaintiff argues this was an improper assessment of Plaintiff's credibility under SSR 16-3p which prohibits an ALJ's consideration of a claimant's character in evaluating subjective symptoms.  (*Id.* at 32.)  Defendant does not address Plaintiff's argument that the ALJ violated SSR 16-3p's elimination of credibility from the evaluation of a claimant's symptoms.  However, Defendant argues the ALJ properly considered Plaintiff's inconsistent statement pursuant to 20 C.F.R. § 404.1529(c)(4). (ECF 15 at 17.)

14
15
16
17
18
19

Putting aside any possible waiver by Defendant in failing to address the ALJ's compliance with SSR 16-3p and its removal of credibility from symptom evaluation, the primary issue here is whether the ALJ relied on Plaintiff's inconsistent statement regarding alcohol use to assess the intensity of her symptoms and how they limited her ability to perform work-related activities or as an examination of her character for truthfulness.

20
21
22
23
24

*Social Security Ruling 16-3p Titles II and XVI: Evaluation of Symptoms in Disability Claims* superseded and rescinded *Social Security Ruling 96-7p: Policy Interpretation Rule Titles II and XVI Evaluation of Symptoms in Disability Claims: Assessing the Credibility of an Individual's Statements*.  SSR 16-3p, 2017 WL 5180304, *1-2 (2017).[13]  The purpose of SSR 16-3p was to "eliminat[e] the use of the term

25
26
27
28

---

[13] SSR 16-3p was republished in its entirety on October 25, 2017 with a revision to clarify it would apply to determinations and decisions issued on or after March 28, 2016.  The ALJ's decision was issue on April 29, 2019.  (AR 56.)

39

'credibility from [its] sub-regulatory policy" and "[i]n doing so, . . . clarify that subjective symptom evaluation is not an examination of an individual's character." *Id.* at *2.  Under SSR 16-3p, ALJs are not permitted "to assess [Plaintiff's] overall character or truthfulness in the manner typically used during an adversarial court litigation." *Id.* *11. The evaluation should "not be to determine whether he or she is a truthful person." *Id.* Instead, the ALJ's evaluation's must "focus on whether the evidence establishes a medically determinable impairment that could reasonably be expected to produce the individual's symptoms and given the [ALJ's] evaluation of the individual's symptoms, whether the intensity and persistence of the symptoms *limit the individual's ability to perform work-related activities.*" *Id.* (emphasis added).

Both SSR 16-3p and § 404.1529(c)(4), cited by Defendant, do permit ALJ's to consider inconsistencies between a Plaintiff's statements and evidence in the record, but it is for purposes of evaluating symptoms that limit work-related activities, not to find a claimant untruthful as a general matter.  Under the heading "How we determine the extent to which symptoms, such as pain, *affect your capacity to perform basic work activities*," § 404.1529(c)(4) indicates they "will consider whether there are any *inconsistencies* in the evidence and the extent to which there are any conflicts between your statements and the rest of the evidence, including your history, the signs and laboratory findings, and statements by your medical sources or other persons about how *your symptoms affect you.*" § 404.1529(c)(4) (emphasis added).

Similarly,  under the heading "How We  Determine if an Individual's Symptoms *Affect the Ability to Perform Work-Related Activities* for an Adult . . ." SSR 16-3p indicates "[i]n determining whether an individual's symptoms *will reduce his or her corresponding capacities to perform work-related activities* . . . we will consider the *consistency* of the individual's own statements [by] compar[ing] statements an individual makes in connection with the individual's claim for disability benefits with any existing statements the individual made under other circumstances."  SSR 16-3p, 2017 WL 5180304, *8 (emphasis added).  Additionally, where SSR 16-3p indicates an ALJ may

compare information a claimant provides to a medical source with the claimant's other statements, it is for purposes of reaching a conclusion regarding the limiting effects of symptoms, not to find the claimant generally truthful or not.  SSR 16-3p, 2017 WL 5180304 at *6-7.[14]

Here, Plaintiff's prior use of alcohol is not a symptom the ALJ considered to determine Plaintiff's capacity to perform work activities under § 404.1529(c)(4) or under SSR 16-3p.  The ALJ specifically notes "abuse issues have been in at least partial remission since the alleged onset date" and Plaintiff "testified she had not used alcohol since 2016" and then concludes "[a]ccordingly, substance abuse *is not material to a finding of disability* in this case."  (AR 45 (emphasis added).)  Given alcohol abuse was not a symptom impacting Plaintiff's disability, the only purpose in pointing out the difference in testimony and the medical record is to evaluate Plaintiff's character for truthfulness.  Because this is prohibited by SSR 16-3p, the ALJ erred in his evaluation of Plaintiff's symptoms testimony on this basis.

### 4.   Specific, Clear, and Convincing Reasons

To meet the specific, clear, and convincing reasons standard, "[t]he ALJ must state specifically which symptom testimony is not credible and what facts in the record lead to that conclusion."  *Smolen*, 80 F.3d at 1284; *see also Lambert v. Saul*, 980 F.3d 1266, 1268 (9th Cir. 2020) ("The ALJ must identify the *specific testimony* that he discredited and

---

[14] It is not clear this type of assessment of claimant's character for truthfulness would have been proper before SSR 16-3p.  In discussing SSR 16-3p, the Ninth Circuit acknowledged in a footnote that SSR 16-3p eliminated the use of the term credibility, recognized its purpose was to "clarify that subjective symptom evaluation is not an examination of an individual's character," and then stated "[t]his ruling makes clear what our precedent already required: that assessments of an individual's testimony by an ALJ are designed to evaluate the intensity and persistence of symptoms after [the ALJ] find[s] that the individual has a medically determinable impairment(s) that could reasonably be expected to produce those symptoms, *and not to delve into wide-ranging scrutiny of the claimant's character and apparent truthfulness*. *Trevizo*, 871 F.3d at 678 n.6.

explain the *evidence undermining*.") (emphasis added); *Treichler*, 775 F.3d at 1102 (The ALJ must "*specifically* identify the testimony from a claimant [the ALJ] finds not to be credible and . . . explain what evidence undermines this testimony.") (emphasis added); *Parra*, 481 F.3d at 750 ("The ALJ must provide clear and convincing reasons to reject a claimant's subjective testimony, by specifically identifying what testimony is not credible and what evidence undermines the claimant's complaints."); *Vasquez v. Astrue,* 572 F.3d 586, 592 (9th Cir.2009) ("[T]he ALJ [is] required to point to *specific facts* in the record.") (emphasis added) (internal quotation marks omitted); *Burrell v. Colvin*, 775 F.3d 1133, 1138 (9th Cir. 2014).

As detailed above (*see supra* V.C.2), the ALJ has not identified what testimony he is finding not credible and what undermines that testimony.  (AR 47.)  He summarizes some of her symptoms including pain in her arms, reaching overhead, headaches, pain in her legs and hips that impact walking, neuropathy in her hands, anxiety, and memory loss. And then he concludes her statements are not consistent with the record.  (AR 47.)  The decision then goes on to summarize her medical history with emphasis on mild findings. (AR 49-51.)  However, he never indicates what evidence is undermining which testimony. The grouping of the medical summary might suggest that he is discrediting testimony related to that grouping, but the ALJ never makes that actual connection between the two.

The closest the decision comes to making a connection between the evidence and testimony is the concluding statements that the objective medical evidence does not result in "disabling functional limitations" or limitations that "exceeded the residual functional capacity adopted herein."  (AR 49-51.)  However, these types of general statements give no indication what testimony is being rejected for what reason.  "[A]n ALJ does not provide specific, clear, and convincing reasons for rejecting a claimant's testimony by simply reciting the medical evidence in support of his or her residual functional capacity determination." *Brown-Hunter v. Colvin*, 806 F.3d 478, 489 (9th Cir. 2015); *Isis A. v. Saul*, Case No. 18cv01728-W-MSB, 2019 WL 3554969, at *5 (S.D. Cal. Aug. 2, 2019) (ALJ's generic references to a plaintiff's statements as "complaints of disabling symptoms and

limitations . . . did not specifically identify the statements that the ALJ was discrediting");
*see also Eldridge v. Berryhill*, Case No. 17-cv-497-JLA-BLM, 2018 WL 2357147, at *11
(S.D. Cal. May 23, 2018) ("The ALJ's focus on the connection between the medical
evidence and the RFC, instead of Plaintiff's testimony, failed to provide specific, clear, and
convincing reasons for disbelieving specific statements from Plaintiff's testimony.").

Additionally, the Court is not permitted to draw inferences from the ALJ's summary
of the evidence because "[a]s [the Ninth Circuit] ha[s] long held, 'we are constrained to
*review* the reasons the *ALJ asserts*.'" *Brown-Hunter*, 806 F.3d at 494 (quoting *Connett v.
Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003) (emphasis in *Brown-Hunter*). Inconsistencies
this court might identify "cannot provide the basis upon which [to] affirm the ALJ's
decision." *Id.* ("That is, the error could not be corrected by the district court's statement of
links between claimant testimony and certain medical evidence.").

The Court finds the ALJ failed to provide specific, clear, and convincing reasons
for rejecting Plaintiff's symptom testimony and as discussed below, (*see infra* V.E) this
was not harmless error.

## D.   Flawed Hypothetical on Concentration, Persistence, or Pace

Plaintiff argues the ALJ committed reversible error in posing a flawed hypothetical
to the vocational expert that lacked the ALJ's own finding that Plaintiff had moderate
limitations in concentration, persistence, and pace. (ECF 14-2 at 33-34.) Defendant does
not dispute the ALJ found Plaintiff had moderate limitations in concentration, persistence
and pace, but argues that finding was at step 2[15] and the ALJ went on to adopt Dr.
Glassman's finding of *mild* limitations in concentration, persistence, and pace when
assessing Plaintiff's RFC. (ECF 15 at 14.) Defendant also argues the RFC and

---

[15] As discussed below, it appears the ALJ's moderate finding as to concentration,
persistence, and pace was not made at step 2, but rather was at step 3 in determining
whether Plaintiff's impairments met or equaled a listing. (AR 43 (describing step 3), 45-
46 (finding Plaintiff's impairments do not meet a listing).)

hypothetical adequately accounted for the moderate limitations by limiting Plaintiff to understanding, remembering, and carrying out simple instructions. (ECF 15 at 15.)

### 1.   ALJ's Findings on Concentration, Persistence, and Pace

The ALJ's analysis at step 3 of the sequential evaluation includes the following:

> With regard to concentrating, persisting, or maintaining pace, the claimant has *moderate limitation*.  Dr. Glassman found the claimant was alert and oriented as to person, place, and situation. (Ex. 8F/07 [AR 1219]).  Cognitively, Dr. Glassman found the claimant did a serial three exercise without error (id.)  For the above reasons, the claimant has *moderate* limitations in this domain.

(AR 46 (emphasis added).)

Later in the ALJ's decision, in evaluating the physician opinions for purposes of Plaintiff's RFC, the ALJ gave "full weight" to the opinion of Dr. Glassman.  (AR 52.)  In discussing his opinion, the ALJ accurately describes Dr. Glassman as finding Plaintiff "had *mild* impairment in her capacity to maintain concentration, persistence, and pace" and "*mild* impairment in her capacity to understand and follow instructions consistently." (AR 52) (emphasis added); *see also* AR 1221 (Dr. Glassman states, "[s]he has mild impairment in her capacity to maintain concentration, persistence, and pace, and to adapt to changes and stresses in a workplace setting" and "mild impairment in her capacity to understand and follow instructions consistently.")

After finding Plaintiff was unable to perform her past relevant work, the ALJ determined Plaintiff could adjust to other work that exists in the national economy.  (AR 54-54.)  To reach this conclusion, the ALJ relied on the testimony from a vocational expert that an individual of Plaintiff's age, education, work experience, and subject to the residual functional capacity found by the ALJ, Plaintiff could perform the requirements of three jobs.  (AR 55.)  The vocational expert's testimony that Plaintiff could perform these three jobs was based on a hypothetical posed during Plaintiff's hearing that "[s]he is able to understand, remember, and carry out simple instructions and tasks and she should

20-cv-0984-AJB-BGS

1    not work in a setting which includes constant or regular contact with the general public or

2    more than infrequent handling of customer complaint." (AR 93.) This tracks the

3    limitation in the ALJ's RFC for Plaintiff which includes that Plaintiff "is able to

4    understand, remember, and carry out simple instructions and tasks, but should not work

5    in a setting that includes constant or regular contact with the general public or more than

6    infrequent handling of customer complaints." (AR 47.) Neither the RFC nor

7    hypothetical to the vocational expert explicitly indicated Plaintiff had any limitations,

8    mild or moderate, in concentration, persistence, and pace.

### 2. Analysis

10       The primary issue then is whether the RFC and hypothetical posed to the

11   vocational expert accounted for Plaintiff's limitations in concentration, persistence, and

12   pace. "If a hypothetical does not reflect all the claimant's limitations, . . . the expert's

13   testimony has no evidentiary value to support a finding that the claimant can perform jobs

14   in the national economy." *DeLorme v. Sullivan*, 924 F.2d 841, 850 (9th Cir. 1991) (citing

15   *Embrey v. Bowen*, 849 F.2d 418, 423 (9th Cir. 1988) and *Gallant v. Heckler*, 753 F.2d

16   1450, 1452 (9th Cir. 1984)); *Flores v. Shalala*, 49 F.3d 562, 570 (9th Cir. 1995) ("[T]he

17   Secretary may only rely upon the vocational expert testimony if the questions posed by

18   the ALJ include all of the claimant's functional limitations, both physical and mental.");

19   *see also Valentine*, 574 F.3d at 689 ("While the claimant has the burden of proof at steps

20   one through four, the burden of proof shifts to the Commissioner at step five to show that

21   the claimant can do other kinds of work.")(citations omitted).

22       The ALJ's conclusion that there were jobs Plaintiff could do available in the

23   national economy was based on the vocational expert's testimony. (AR 55 ("To

24   determine the extent to which these limitations erode the unskilled light occupational

25   base, the undersigned asked the vocational expert whether jobs exist in the national

26   economy for an individual with the claimant's age, education, work experience, and

27   residual functional capacity.").) If the hypothetical posed to the vocational expert did not

28   account for Plaintiff's limitations in concentration, persistence, and pace, then there is no

1  basis for the ALJ's finding that Plaintiff "is capable of making a successful adjustment to

2  other work that exists in significant numbers in the national economy." (AR 55.)

3          There is no dispute that the RFC and hypothetical do not explicitly state Plaintiff

4  has moderate limitations in concentration, persistence, or pace. Rather, the question is if

5  the limitation to "understand, remember, and carry out simple instructions and tasks"

6  accounted for Plaintiff's limitations in concentration, persistence, and pace. Plaintiff,

7  relying on *Brink v. Commissioner of Social Security Administration*, argues the

8  hypothetical posed to the vocational expert — limiting Plaintiff to understanding,

9  remembering and carrying out simple instructions and tasks — did not adequately

10 account for the moderate limitations in concentration, persistence, and pace. (ECF 14-2

11 at 33-34 (citing *Brink v. Comm'r of Soc. Sec. Admin.*, No. 08-35331, 343 Fed. Appx. 211

12 (9th Cir. July 10, 2009), *Brink v. Comm'r of Soc. Sec.*, No. 13-35385, 599 Fed. Appx.

13 657 (9th Cir. March 25, 2015), and *Lubin v. Comm'r of Soc. Sec.*, No. 11-35462, 507

14 Fed. Appx. 709, 712 (9th Cir. Feb. 8, 2013).) Defendant, relying primarily on *Stubbs-*

15 *Danielson v. Astrue*, a case distinguished in *Brink*, argues the limitation to understanding,

16 remembering, and carrying out simple instructions adequately accounted for Plaintiff's

17 limitations in concentration, persistence, and pace. (ECF 15 at 15-16 (citing *Stubbs-*

18 *Danielson v. Astrue*, 539 F.3d 1169, 1173-74 (9th Cir. 2008).)

19         The Court finds the ALJ's hypothetical to the vocational expert, limiting Plaintiff

20 to "understand[ing], remember[ing], and carry[ing] out simple instructions and tasks"

21 (AR 93) adequately captured Plaintiff's moderate limitations in concentration,

22 persistence, and pace. As noted above, the parties dispute whether this issue is controlled

23 by *Stubb-Danielson* or *Brink*. *Stubb-Danielson*, 539 F.3d at 1173-74; *Brink*, 343 Fed.

24 Appx. 211, *1-2 (9th Cir. 2009).[16]

25

26

27 [16] The Court need not reach Defendant's assertion that the earlier moderate finding should

28 be disregarded because the Court finds the hypothetical presented to the vocational expert
   adequately accounted for Plaintiff's moderate limitations in concentration, persistence,

1    In *Stubbs-Danielson*, one physician indicated the claimant had a slow pace in

2    thinking and actions and found her moderately limited in performing at a consistent pace

3    without breaks, but did not provide restrictions on what the claimant could do.  539 F.3d

4    at 1173.  A second physician also identified a slow pace in thinking and actions and

5    moderate limitations in other mental areas, but found the claimant retained the ability to

6    carry out simple tasks.  *Stubbs-Danielson*, 539 F.3d at 1173.  The court found the ALJ

7    did not improperly reject the opinion of the first physician in adopting the restrictions

8    from the second.  *Id.* at 1174.  In adopting the view of two other circuits, the court

9    concluded "the ALJ's assessment of a claimant adequately captures restrictions related to

10   concentration, persistence, or pace where the assessment is consistent with restrictions

11   identified in the medical testimony."  *Id.* (citing *Howard v Massanari*, 255 F.3d 577, 582

12   (8th Cir. 2001) and *Smith v. Halter*, 307 f.3d 377, 379 (6th Cir. 2001)).

13   The issue here is slightly different than *Stubb-Danielson* because Plaintiff is

14   arguing the ALJ failed to include his own finding of moderate limitations in

15   concentration, persistence, and pace in the RFC rather than a physician's.  (ECF 14-2 at

16   33-34.)  However, the critical issue is the same – whether the restrictions in the ALJ's

17   RFC and hypothetical to the vocational expert are "consistent with restrictions identified

18   in the medical testimony."  *Stubbs-Danielson*, 539 F.3d at 1174; *see also Israel v. Astrue*,

19   494 Appx. Fed. 794, 796 (9th Cir. Aug. 28, 2012)(unpublished) (Applying *Stubbs-*

20   *Danielson* and finding ALJ "adequately took into account his step-3 finding of . . .

21   moderate difficulties in concentration, persistence, or pace" at steps 4 and 5 by relying on

22

23

———————————

24   and pace.  Even if the ALJ erred in finding moderate limitations at step three and mild
     limitations at step four and five, a conclusion the Court does not reach, it would be
25   harmless because the RFC and hypothetical adequately accounted for Plaintiff's moderate
26   limitations.  "ALJ errors in social security cases are harmless if they are 'inconsequential
     to the ultimate nondisability determination.'"  *Marsh v. Colvin*, 792 F.3d 1170, 1173 (9th
27   Cir. 2015) (quoting *Stout v. Comm'r of Soc. Sec.*, 454 F.3d 1050, 1055-56 (9th Cir.
28   2006)).]

a physician opinion that included the imposed restrictions). *Stubbs-Danielson* also makes clear the ALJ is permitted to translate a claimant's limitations in concentration, persistence, or pace into functional restrictions for purposes of the claimant's RFC. *Stubbs-Danielson*, 539 F.3d at 1174; *see also Israel*, 494 Fed. Appx. at 796 (acknowledging step three finding of moderate limitations in concentration, persistence, or pace and approving ALJ drawing on medical testimony to set functional restrictions in understanding, remembering, and completing tasks). It also provides an example of medical testimony that is adequate to support RFC restrictions — an opinion that identifies the concentration, persistence, and pace limitations and also provides the restrictions that are ultimately included in the hypothetical or RFC. *Stubbs-Danielson*, 539 F.3d at 1173-74 (explaining that the second physician's opinion identified similar pace restrictions to the first physician *and* provided restrictions to simple tasks); *see also Israel*, 494 Fed. Appx. at 796 (Approving ALJ's drawing restrictions from physician opinion).

*Brink* found an ALJ's hypothetical to a vocational expert limiting the claimant to "simple, repetitive work" was incomplete when the ALJ also found the claimant had moderate limitations in concentration, persistence. 343 Fed. Appx. at 212. However, the court explained that the ALJ could not have translated the claimant's moderate limitations in concentration, persistence, or pace to a "simple, repetitive work" restriction because the vocational expert had indicated an individual with moderate to marked concentration deficits would not be able to perform the simple repetitive work described by the ALJ. *Id*. Plaintiff does not point to any similar testimony here.

Additionally, while *Brink* does indicate the ALJ accepted medical evidence the claimant had moderate difficulty maintaining concentration, persistence, and pace, it does not address whether that medical testimony or any other medical testimony found the claimant capable of simple repetitive work, *i.e.* that there was medical testimony

supporting the restriction.[17]  In this respect it is distinguishable from *Stubbs-Danielson* and cases like this one where there is medical testimony supporting the restrictions set in the hypothetical. 539 F.3d at 1173 (physician report identified slow pace in thinking and actions, but also found claimant retained ability to carry out simple tasks).  Similarly, another unpublished Ninth Circuit decision relied on by Plaintiff found limiting a claimant to one to three step tasks "did not capture the limitation in concentration, persistence, or pace found by the ALJ," but the decision does not discuss whether any medical testimony supported those restrictions.  *Lubin v. Comm'r of Soc. Sec.*, No. 11-35462, 507 Fed. Appx. 709, 712 (9th Cir. Feb. 8, 2013).

Where there is no medical testimony supporting the ALJ's RFC restrictions, courts understandably find it distinguishable from *Stubbs-Danielson* and more in line with *Brink*.  *Angela Monique B. v. Saul*, Case No. 19-cv-0945-RBB, 2020 WL 2786870, at *11 (S.D. Cal. May 29, 2020) ("Unlike *Stubbs-Danielson*, however, there are no medical source opinions relied on by the ALJ that despite her slow pace, Plaintiff could perform "simple, routine, repetitive tasks.") (collecting cases); *see also Davis v. Saul*, Case No. 20-cv-814-BLM, 2021 WL 2333256, at *10 (S.D. Cal. June 7, 2021).  The only other case relied on by Plaintiff on this issue explicitly indicates "[h]ere unlike in *Stubbs-Danielson*, there is no medical opinion evidence that the ALJ was adopting when he made the determination that, despite the . . . moderate difficulties with regard to concentration, persistence, or pace that he had found, plaintiff was still capable of remembering, understanding, and carrying out routine and non-complex tasks in a non-public setting." *Truong v. Berryhill*, Case No. 17-cv-2179-BEN-RNB, 2018 WL

---

[17] As *Brink* itself and other courts have noted, *Brink* is an unpublished decision.  343 Fed. Appx. 211, 212 (9th Cir. July 10, 2009) (Noting the disposition is "not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36-3."); *Rutherford v. Berryhill*, Case No. 17-cv-1361-JM-RNB, 2018 WL 3629967, at *4 (S.D. Cal. July 13, 2018) ("*Brink* is not controlling authority, whereas *Stubbs-Danielson* is.) (citing 9th Cir. R. 36-3(a)).

61982879, at *15 (S.D. Cal. Nov. 27, 2018) (Rejecting the Commissioner's suggestion that the *ALJ* could translate restrictions *absent medical opinion evidence*) (emphasis added).  That is not the case here.

Here, there is sufficient medical testimony supporting the ALJ's functional restrictions – understand, remember, and carry out simple instructions and tasks.  As noted by Defendant, two state agency physicians and Plaintiff's own treating psychiatrist found Plaintiff capable of performing simple tasks within the scope of the ALJ's RFC and hypothetical. (ECF 15 at 15 (citing AR 112, 129 (two state agency physician opinions) and AR 1642 (Dr. Harvey's opinion).)  Plaintiff's treating psychiatrist, Dr. Harvey, found Plaintiff had moderate limitations in "maintaining concentration, persistence, or pace," but retained the ability to "carry on very short and simple instructions" and "understand and remember very short and simple instructions."  (AR 1642, 1644.)  Both state agency physicians found Plaintiff had moderate limitations in concentration persistence or pace and also found she was not significantly limited in her "ability to understand and remember" short or detailed instructions or "carry out very short and simple instructions." (AR 107, 111, 123, 128.)

Given this opinion evidence, the Court finds the ALJ's restrictions adequately captured Plaintiff's moderate concentration, persistence or pace limitations because the restrictions are "consistent with restrictions identified in the medical testimony."  *Stubbs-Danielson*, 539 F.3d at 1174; *see also Rutherford*, 2018 WL 3629967 at * 4 ("Here, as in *Stubbs-Danielson*, the ALJ's limitation to 'simple and routine tasks' in the RFC was consistent with the other restrictions identified in the medical evidence."); *Clarke v. Berryhill*, Case No. 16-cv-1595-BTM-BLM, 2017 WL 4842409, at *3 (S.D. Cal. Oct. 24, 2017) ("Here, as in *Stubbs-Danielson*, the ALJ's determination that Plaintiff had the RFC to perform 'simple, routine tasks in a non-public setting' was substantially supported by . . . five experts who opined on Plaintiff's capacity for concentration persistence, and pace.").  Additionally, to the extent a particular medical opinion must contain both the moderate limitations in concentration, persistence, and pace and the restrictions

ultimately set by the ALJ, that is met here because both state agency physicians and Dr. Havey all included both.

The Court finds the ALJ's hypothetical to the vocational expert was not flawed as to Plaintiff's moderate limitations in concentration, persistence, or pace.

### E. Harmless Error

"ALJ errors in social security cases are harmless if they are 'inconsequential to the ultimate nondisability determination.'" *Marsh*, 792 F.3d at 1173 (quoting *Stout*, 454 F.3d at 1055-56). Here, the Court cannot find the ALJ's errors in giving minimal weight to Dr. Harvey's opinion, no weight to Dr. Kelso's opinion, failing to consider the § 404.1527(c)(2)-(6) factors as to both opinions, and not providing specific, clear, and convincing reasons for rejecting Plaintiff's symptom testimony were inconsequential to the ultimate nondisability determination.

Not only was the failure to consider the § 404.1527(c)(2)-(6) factors reversible error, but as noted above, if the ALJ had considered the § 404.1527(c)(2)-(6) factors, the ALJ might have avoided other errors and instead at least given more weight or consideration to those opinions. *Trevizo*, 871 F.3d at 676 (Failing to "consider factors such as length of the treating relationship, the frequency of examination, the nature and extent of the treatment relationship or the supportability of the opinion . . . constitutes reversible legal error."). Although the Court is not finding these opinions had to be given full or great weight, if either were credited based on factors the ALJ did not consider, it could change the disability determination. For example, both Dr. Kelso and Dr. Harvey indicated that Plaintiff would miss more than three days of work per month (AR 1639 (Dr. Kelso), AR 1645 (Dr. Harvey).[18]) The vocational expert testified that Plaintiff could

---

[18] As discussed below (*see infra* V.F) the Court need not determine whether the case should also be remanded under *Brewes v. Commissioner of Social Security Administration* because of Dr. Tang's opinion. 682 F.3d 1157 (9th Cir. 2012). However, the opinion, part of the record under *Brewes*, also indicates Plaintiff would likely miss 2-

not maintain employment missing more than one day per month.  (AR 96.)  The ALJ might ultimately not find support for these opinions on this issue.  It was not addressed at all in the ALJ decision.  However, it the ALJ were to credit either opinion on such an issue, it would change the disability determination.

As to the rejection of Plaintiff's symptom testimony, "the agency's path may not reasonably be discerned."  *Brown-Hunter*, 806 F.3d at 494 (quoting *Treichler*, 775 F.3d at 1099) (Finding ALJ decision that did not identify which testimony was not credible or what evidence contradicted it was not harmless error).  And, even if it could discern a path, it would still be challenging for the Court to determine if the ALJ's evaluation of her symptoms was impacted by the ALJ's improper assessment of Plaintiff's character for truthfulness.

"[W]here the magnitude of an ALJ error is more significant, then the degree of certainty of harmlessness must also be heightened before an error can be determined to be harmless."  *Marsh*, 792 F.3d at 1173.  Here, there were numerous errors in the consideration of two treating physician opinions and the Plaintiff's symptom testimony.   Given the number of the errors, the Court cannot find the errors harmless.

### F.    Remand

"The rare circumstances that result in a direct award of benefits are not present in this case."  *Leon v. Berryhill*, 880 F.3d 1041, 1047 (9th Cir. 2018).  "When the ALJ denies benefits and the court finds error, the court ordinarily must remand to the agency for further proceedings before directing an award of benefits."  *Id.* at 1045 (citing *Treichler*, 775 F.3d at 1099).  A direct award of benefits is only proper when the three conditions of the credit-as-true rule are met.  Here, only the first is met.

Under the three-part rule, the Court first considers "whether the 'ALJ failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or

---

3 days per month.  *Id.* at 1163-64 (Finding evidence considered by the Appeals Council in determining whether to grant review is part of the administrative record).

medical opinion.'" *Id.* at 1045 (quoting *Garrison*, 759 F.3d at 1019). This step is met for the reasons set forth above. However, at the second step, the Court considers "whether there are 'outstanding issues that must be resolved before a disability determination can be made' and whether further administrative proceedings would be useful.'" *Id.* (quoting *Treichler*, 775 F.3d at 1101). "In evaluating this issue, [the Court] consider[s] whether the record as a whole is free from conflicts, ambiguities, or gaps, whether all factual issues have been resolved, and whether the claimant's entitlement to benefits is clear under the applicable legal rules." *Treichler*, 775 F3d at 1104-05.

Here, the Court cannot find the record as a whole free from conflicts, ambiguities, or gaps and there are factual issues regarding Plaintiff's limitations that have not been resolved. For example, while the ALJ failed to explain why he was rejecting Plaintiff's symptom testimony, that is an issue that is not free of conflicts or ambiguities, and it is certainly not clear that Plaintiff is entitled to benefits. Similarly, as detailed above, the most significant error the ALJ made in consideration of both treating physician opinions was not considering the § 404.1527(2)-(6) factors and the errors that led to. Proper consideration of them might result in crediting those opinions, but it also might result in still giving them less weight, but with proper consideration of the required factors. "Where [as here] an ALJ makes a legal error, but the record is uncertain and ambiguous, the proper approach is to remand the case to the agency." *Id.* at 1105. "An award under this rule is a rare exception . . . intended to deter ALJs from providing boilerplate rejections without analysis." *Leon*, 880 F.3d at 1045. "Where [as here] an ALJ makes a legal error, but the record is uncertain and ambiguous, the proper approach is to remand the case to the agency." *Id.* (quoting *Treichler*, 775 F.3d at 1105).

Having found that remand is warranted based on the reasons set forth above, the Court declines to address Plaintiff's remaining argument that the case should additionally be remanded for consideration of Dr. Tang's opinion. The only relief sought by Plaintiff as to Dr. Tang was remand of the case. (ECF 14-2 at 35.) Given the Court has already determined remand is appropriate, the Court need not address the need to remand the case

for an additional reason. *See Hiler v. Astrue*, 687 F.3d 1208, 1212 (9th Cir. 2012) ("Because we remand the case to the ALJ for the reasons stated, we decline to reach [plaintiff's] *alternative ground for remand*.") (emphasis added); *Augustine ex rel. Ramirez v. Astrue*, 536 F. Supp. 2d 1147, 1153 n.7 (C.D. Cal. 2008) ("[The] Court need not address the other claims plaintiff raises, none of which would provide plaintiff with any further relief than granted, and all of which can be addressed on remand."); *see also Wanda v. Saul*, Case No. EDCV 20-0772-RAO, 2021 WL 515616, at *5 (C.D. Cal. Feb. 2021) ("Having found that remand is warranted, the Court declines to address Plaintiff's remaining issue.") (citing *Hiler*, 687 F.3d at 1212 and *Augustine ex rel. Ramirez*, 536 F. Supp. 2d at 1153 n.7).

## VI.  CONCLUSION

Based on the above reasoning, the undersigned Magistrate Judge **RECOMMENDS** that Plaintiff's motion for summary judgment (ECF 14) be **GRANTED**, that Defendant's cross-motion for summary judgment (ECF 15) be **DENIED**, and that the case be **REMANDED** to the agency for further proceedings.

This Report and Recommendation of the undersigned Magistrate Judge is submitted to the United States District Judge assigned to this case, pursuant to 28 U.S.C. § 636(b)(1).

**IT IS ORDERED** that no later than **March 16, 2022**, any party to this action may file written objections with the Court and serve a copy to all parties.  The document should be captioned "Objections to Report and Recommendation."

**IT IS FURTHER ORDERED** that any reply to the objections shall be filed with the Court and served on all parties no later than **March 23, 2022**.

**IT IS SO ORDERED.**

Dated:  February 24, 2022

Hon. Bernard G. Skomal
United States Magistrate Judge

20-cv-0984-AJB-BGS